639 A.2d 147

**Patty MORRIS, et al.**

v.

**OSMOSE WOOD PRESERVING, et al.**

**No. 732, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Feb. 25, 1994.

Reconsideration Granted in Part and
Opinion Corrected May 6, 1994.

Arnold Levin (Fred S. Longer, Levin, Fishbein, Sedran & Berman, on the brief), Philadelphia, PA, Gary E. Mason (Michael D. Hausfeld and Cohen, Milstein, Hausfeld & Toll, on the brief), Washington, DC (Steven M. Pavsner and Joseph,

Greenwald & Laake, P.A. on the brief), Greenbelt, for appellants.

Christopher Scott D'Angelo (Charles B. Casper and Montgomery, McCracken, Walker & Rhoads, on the brief), Philadelphia, PA, for appellee, Hoover.

Read K. McCaffrey (Andrew J. Toland and Patton, Boggs & Blow, on the brief), Baltimore, for appellee, Osmose.

H. Patrick Donohue and Armstrong, Donohue & Ceppos, on the brief, Rockville, for appellee, Hoover.

Philip C. Jacobson and Anderson, Coe & King, on the brief, Baltimore, for appellee, Hoover Treated Wood Products, Inc.

Argued before WILNER, C.J., and MOYLAN, J., and JAMES S. GETTY, Judge (retired), Specially Assigned.

JAMES S. GETTY, Judge, Specially Assigned.

The subject matter of this litigation relates to allegedly defective plywood roofing materials installed in residential structures throughout Maryland since 1980. The initial complaint, filed January 9, 1991, has proliferated into amended complaints two, three, and four. The roof has already fallen on the appellants herein via an order of the Circuit Court for Montgomery County, filed March 26, 1993, dismissing the Fourth Amended Complaint in its entirety and purporting to affirm the dismissal of several remaining counts in the Third Amended Complaint. Appellants' motion for reconsideration was denied by the trial court. In this appeal, they contend, in essence, that the roof cannot fall absent a hearing on the merits of their claim.

The issues raised in this appeal are:

1.  Whether the trial court erred in dismissing plaintiffs' tort claims under the economic loss doctrine.

2.  Whether plaintiffs must show direct reliance upon defendants' representations and omissions in order to maintain an action for damages under the Maryland Consumer Protection Act.

3. Whether the trial court erred in dismissing plaintiffs' breach of warranty claims as barred by the four year statute of limitations, and whether the plaintiffs alleged fraud that would toll the running of the statute.

*Facts*

This is a class action suit for damages, and for mandatory injunctive relief, seeking damages from the defendants for all expenses the plaintiffs and members of the class they represent in the State of Maryland have incurred, or will incur, for inspecting, repairing, and replacing roofs constructed with fire retardant, treated plywood ("FRT") manufactured, marketed, and/or sold by the defendants.

The named appellants are Laura Herlihy, Patty Morris, Richard Mills, and Michael Karbeling. The appellees are Osmose Wood Preserving, Inc., Hoover Treated Wood Products, Inc., and Hoover Universal, Inc.[1] Laura Herlihy purchased a townhouse in Gaithersburg on September 28, 1983. The roof of the townhouse is constructed of FRT plywood manufactured by Hoover Universal, Inc. Patty Morris is the owner of a townhouse in Greenbelt bought November 3, 1987. The roof is constructed of FRT plywood manufactured by Osmose Wood Preserving, Inc. Richard Mills's townhouse in Greenbelt, which contains FRT plywood manufactured by Osmose, was also acquired November 3, 1987. Michael Karbeling's property was acquired July 11, 1985. The roof contains FRT plywood manufactured by Hoover Wood Products, Inc.

Appellants allege that the FRT plywood used in the construction of their respective townhouses has deteriorated, resulting in impairment of the strength and structural integrity of the roofs. Appellants contend that the roofs will need to

---

1. Hoover Universal sold its Wood Preserving Division to Hoover Wood Treated Products, Inc., sometime in 1983 and, allegedly, retained liability for any products sold prior to the sale date. Appellants also allege that "since at least 1980 HTWP, operating as a division of Hoover Universal prior to September 28, 1993," manufactured and sold FRT plywood.

be replaced, and that a threat of personal injury exists, although no physical injuries have occurred. The potential for injury, it is alleged, could result from walking on the roofs or from the roofs collapsing. The appellants further allege that each of the appellees marketed FRT plywood, and represented that the product was suitable for roof construction. In April, 1987, the American Plywood Association notified the appellees that the FRT plywood was subject to thermal degradation. Hoover Treated Wood Products received an inspection report from the American Plywood Association on or about March 30, 1986, describing a deteriorated FRT plywood situation. Although the appellees did not disclose the defective condition of plywood to the appellants, the dangers created by FRT plywood, it is alleged, became publicly known in 1990 through media reports, including an article in the *New York Times* dated April 11, 1990, and in the *Montgomery Village Gazette* on the same date.

## The Pleadings

The defendants filed motions to dismiss the Second Amended Complaint and the court (McKenna, J.), by order dated July 29, 1991, stated that:

1. All counts as to each defendant in tort (strict liability, Count I; negligence, Count II; and negligent misrepresentation, Count IV) are dismissed with prejudice and final judgments are directed on these counts,

2. All claims for breach of implied warranty, (Count III) against Hoover Universal and HTWP with respect to plaintiffs Herlihy and Karbeling, are dismissed with prejudice as barred by limitations, and final judgment are directed on this Count,

3. Osmose's motion to dismiss Count III is denied,

4. All defendants' motions to dismiss Count V under the State Consumer Protection Act are denied, and

5. Plaintiffs shall file a more definite statement regarding Count III as to Osmose and Count V as to all defendants.

Appellants then filed a Third Amended Complaint, reasserting the claims dismissed with prejudice in Judge McKenna's prior order. Rather than filing a more definite statement of Count III as to Osmose, appellants repeated, verbatim, the allegations made in the Second Amended Complaint and provided a more definite statement as to Count V, the Maryland Consumer Protection Act.

The Third Amended Complaint was greeted with motions to dismiss the counts remaining under Judge McKenna's order and it is these motions that were addressed by Judge Cave on September 25, 1992. Following the hearing before Judge Cave, appellants filed a Fourth Amended Complaint excising some allegations that the appellees characterized as "scandalous."

As pointed out earlier herein, Judge Cave dismissed the Fourth Amended Complaint in its entirety. He also dismissed Count III (implied warranty) as to Osmose, and indicated that the "... granting of the Motion to Dismiss Counts I and II by Judge McKenna will not be disturbed. The Court also declines to disturb the dismissal by Judge McKenna of Counts IV, V, and VI." From the record, however, it is clear that Count VI was never before Judge McKenna; it appeared for the first time in the Third Amended Complaint filed three months after Judge McKenna's order dated July 29, 1991. More important, Judge McKenna did not dismiss Count V; he denied the motion to dismiss as to all defendants and required that plaintiffs file a more definite statement as to that count relating to State Consumer Protection Acts.

For the purposes of this appeal, we shall assume that Judge Cave would have dismissed Count V, since he believed it had been dismissed and "declined to disturb the dismissal." It would serve no worthwhile purpose to remand the case for clarification of what appears to us to be patently obvious.

## Standard of Review

Appellate review of a judgment granting a motion to dismiss pursuant to Md. Rule 2–322 requires that this Court

assume as true all well-pleaded material facts in the complaint and all reasonable inferences that may be drawn therefrom. If facts are alleged that, if proved, would entitle plaintiffs to relief, then the motion to dismiss was improperly granted. *See Stone v. Chicago Title Ins. Co.*, 330 Md. 329, 624 A.2d 496 (1993); *MacGill v. Blue Cross of Maryland,* 77 Md.App. 613, 551 A.2d 501, *cert. denied,* 315 Md. 692, 556 A.2d 673 (1989).

## Issue I

The Supreme Court has emphasized the need to maintain the separation of tort and contract law to prevent "contract law [from] drown[ing] in a sea of tort." *East River Steamship Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 866, 106 S.Ct. 2295, 2299, 90 L.Ed.2d 865 (1986). Accordingly, the Court held that a manufacturer in a commercial relationship has no duty under either a negligence or strict products liability theory to prevent a product from injuring itself. The case involved a suit by a shipbuilder against the manufacturer of turbines installed in four supertankers. The turbines malfunctioned in each of the four vessels causing substantial economic damages for replacement and lost revenue. The Court determined that the failure, or damage, to a product is a warranty claim, which simply means that the product has not met the customer's expectations. The customer, however, may obtain the benefit of his bargain by a breach of warranty action.

*East River, supra,* was decided by the Supreme Court on June 16, 1986. Thereafter, the Court of Appeals (McAuliffe, J.), on November 14, 1986, addressed the issue of whether economic losses are recoverable in tort, or whether such claims are to be pursued as a breach of warranty. *See Council of Co-Owners v. Whiting–Turner,* 308 Md. 18, 517 A.2d 336 (1986). In that case the condominium owners association brought a tort action against the general contractor, developers and architects involved in the construction of a building, alleging the negligent failure to construct ten vertical utility shafts with materials having a fire resistance rating of two hours as required by both the design and the local fire

code. The owners alleged that these latent conditions created a fire hazard that "presents a threat to the safety and welfare of the owners and occupants of the Atlantis Condominium and to the personal and real property of the owners and occupants."

Following a thorough review of the case law pertaining to the issues of privity and economic loss, the Court found "particularly persuasive" the reasoning of the Indiana Supreme Court in *Barnes v. Mac Brown and Co.*, 264 Ind. 227, 342 N.E.2d 619 (1976), stating:

> The contention that a distinction should be drawn between "economic loss" and personal injury is without merit. Why there should be a difference between an economic loss resulting from injury to property and an economic loss resulting from personal injury has not been revealed to us. When one is personally injured from a defect, he recovers mainly for his economic loss. Similarly, if a wife loses a husband because of injury from a defective construction, the measure of damages is totally economic loss. We fail to see any rational reason for the distinction.[2]

308 Md. at 34–35, 342 N.E.2d 619.

The Court of Appeals also cited *Drexel Properties, Inc. v. Bay Colony Club Condominium, Inc.*, 406 So.2d 515 (Fla.Dist. Ct.App.1981), *cert. denied,* 417 So.2d 328 (Fla.1982), which held that damages for economic loss were recoverable in a

---

**2.** The Supreme Court in *East River, supra,* said:

The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the "luck" of one plaintiff in having an accident causing physical injury. The distinction rests, rather, on an understanding of the responsibility a manufacture must undertake in distributing his products.

476 U.S. at 871, 106 S.Ct. at 2302 (quoting *Seely v. White Motor Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145, 151 (1965). "Permitting recovery for all foreseeable claims for purely economic loss could make a manufacturer liable for vast sums. It would be difficult for a manufacturer to take into account the expectations of persons downstream who may encounter its product." 476 U.S. at 874, 106 S.Ct. at 2304.

negligence action absent proof of personal injury or property damage. That holding was expressly overruled, however, in *Casa Clara v. Charley Toppino and Sons, Inc.,* 620 So.2d 1244, 1248 (Fla.1993).

The Court in *Whiting–Turner* concluded that whether a duty will be imposed in this type of case "should depend upon the risk generated by the negligent conduct, rather than upon the fortuitous circumstance of the nature of the resultant damage." The Court held that where the risk is of death or personal injury, the action will lie for recovery of the reasonable cost of correcting the dangerous conditions. *Id.* In footnote 5, the Court explained:

It is the serious nature of the risk that persuades us to recognize the cause of action in the absence of actual injury. Accordingly, conditions that present a risk to general health, welfare, or comfort but fall short of presenting a clear danger of death or personal injury will not suffice. A claim that defective design or construction has produced a drafty condition that may lead to a cold or pneumonia would not be sufficient.

*Id.* It is against the known facts in this case that we apply the test set forth in *Whiting–Turner.*

■ Unlike *Whiting–Turner,* this is not a case where a sudden fire could reasonably be calculated to result in serious physical injury or death in addition to property damage. The damage complained of herein is qualitative, occurring through gradual deterioration of the plywood. The four named appellants have owned their townhouses from six to ten years; not one of the four has replaced the roof from fear of personal injury. In each of the complaints they allege that the plywood has "darkened, spotted, warped and fractured, indicating that it has reduced strength capacity and must be replaced." In short, they want new roofs.

■ Appellants allege in conclusory terms that someone walking on the roof could be injured if the sheathing collapsed, or a heavy snowfall could trigger a collapse. Mere possibilities, however, do not meet the threshold of establishing a clear

danger of death or personal injury. Accordingly, we agree with the trial court that the loss incurred herein is economic, which is not recoverable in a tort action. *See In re Lone Star Industries, Inc.,* 776 F.Supp. 206 (D.Md.1991), where Amtrak sued the manufacturer in tort for the cost of replacing railroad ties that deteriorated prematurely. The federal court granted summary judgment for the manufacturer, holding that as a matter of law Amtrak had not presented evidence of a clear danger of personal injury where the repair process had been ongoing for two years after discovery of the deterioration.

The Court of Appeals recently addressed several of the issues raised in this appeal in *A.J. DeCoster Co. v. Westinghouse Electric Corporation,* 333 Md. 245, 634 A.2d 1330 (1994). In that case, a transfer switch manufactured by Westinghouse allegedly malfunctioned resulting in the suffocation of 140,000 chickens when the auxiliary ventilation system failed to activate during a thunderstorm.

The Court held that DeCoster's claim was for the replacement of a property loss rather than for repair costs, or lost profits. Accordingly, the Court reversed the trial court's dismissal of the negligence count of DeCoster's complaint. In the case *sub judice,* as we have stated, the principal claim is for the replacement cost of gradually deteriorating plywood, which is solely an economic loss.

## Issue II

### Maryland Consumer Protection Act

Appellants next take issue with Judge Cave's dismissal of their "Fifth Claim for Relief," which alleged that, in their advertisements for FRT plywood, appellees violated the Maryland Consumer Protection Act. Md.Com.Law Code Ann. §§ 13–101—13–501 (1990). According to appellants, Judge Cave "reject[ed appellants'] claims under the Act because [they] did not allege that they relied on any false statement of the [appellees]...." Appellants point out that Count V was brought under § 13–408(a) of the Act, which provides that "any person may bring an action to recover for injury or loss

sustained by him as the result of a practice prohibited by this title." They argue at great length that reliance on a false representation is not necessary to a recovery under § 13–408(a).

In addition to responding that reliance *is* necessary under § 13–408(a), appellees set forth an alternative ground for the dismissal of the fifth count. Appellees argue, as they argued below, that the Consumer Protection Act is inapplicable to the instant case because it addresses situations involving "consumers" and "consumer goods." Appellees posit that appellants "did not buy consumer goods. Builders—who are not consumers—bought FRT plywood. [Appellants] bought homes."

■ Preliminarily, we observe that, despite the apparent present understandings of both appellants and appellees, appellants *did* allege that they relied on false statements—as well as omissions—by appellees. In the portion of their complaint headed "Factual Allegations Common to All Claims," appellants alleged that appellees' advertisements "had the capacity, tendency, or effect of deceiving or misleading consumers, including [appellants and other members of] the [c]lass." Appellants alleged that appellee Osmose in particular "knowingly omitt[ed]" to include in its advertising "material fact[s]" regarding the degradation and deterioration characteristics of one of its FRT plywood products. Most significantly, appellants alleged under the fourth count, for negligent misrepresentation:

68. Hoover Universal, HTWP and Osmose knew or should have known that, but for these material omissions, plaintiffs and members of the class would not have purchased buildings or roofs constructed with FRT plywood or would not have allowed FRT plywood to be used as a building material in the roofs.

69. In reliance upon ... Hoover Universal's, HTWP's and Osmose's misrepresentations and omissions, plaintiffs and members of the class purchased buildings with roofs that are and/or were unsafe, in a dangerous condition, and in need of immediate repair or replacement.

In the first paragraph under the "Fifth Claim for Relief," appellants "reallege[d] and incorporate[d] by reference each and every one of the allegations" that had been made to that point.

Because appellants *did* allege that their injury or loss was a result of their reliance on misrepresentations or omissions in appellees' advertisements, the question of whether reliance is always a prerequisite for recovery under § 13–408(a) has not been generated. The matter does not end there, however. Not only have the parties misconstrued the appellants' complaint—they have also misread Judge Cave's "Opinion and Order." Judge Cave did not, as the appellants suggest, state that appellants failed "to allege that they relied on any false statement" of the appellants. He stated: "there *is* no reliance by the plaintiff on the particular statements as required by the fourth element." (Emphasis added.) By this, the judge appears to have made a finding of fact—something that was clearly inappropriate in the context of a motion to dismiss. *See generally* Md. Rule 2–322(c); *Stone,* 330 Md. at 333, 624 A.2d 496 (in ruling upon a motion to dismiss for failure to state a claim upon which relief can be granted, a court must "assume the truth of all relevant and material facts well pleaded and all inferences which can be reasonably drawn from those facts").

The fact that Judge Cave based his dismissal of the "Fifth Claim from Relief" on an improper finding of fact is not fatal to the judge's decision, however. It is well-established that "[a]n appellate court may, on a direct appeal, affirm a trial court's decision on any ground adequately shown by the record, even though not relied on by the trial court...." *Offutt v. Montgomery Co. Bd. of Ed.,* 285 Md. 557, 563 n. 3, 404 A.2d 281 (1979). Because the matters about which appellants complained did not involve "consumers" or "consumer goods," we are convinced that the dismissal of the fifth count was proper.

Appellants allege that appellees violated the following provisions of the Maryland Consumer Protection Act:

## § 13–301.  Unfair or deceptive trade practices defined.

Unfair or deceptive trade practices include any:

(1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;

(2) Representation that:

(i) Consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have;

. . . . .

(iv) Consumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not;

. . . . .

(9) Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with:

(i) The promotion or sale of any consumer goods, consumer realty, or consumer service. . . .

Appellants alleged only that appellees violated the act in advertising FRT plywood.  They did not allege that appellees advertised or were otherwise involved with services or realty.  Thus, no questions are raised as to whether consumer realty or consumer services were involved.  In order to determine whether appellants stated a claim under § 13–301(1), we must resolve whether appellants were "consumers" of the FRT plywood.  In order to determine whether appellants stated a claim under Md.Com.Law Code Ann. § 13–301(2)(i) and (iv) and (9)(i), we must further resolve whether the FRT plywood was at some point "consumer goods."

The Consumer Protection Act defines "[c]onsumer" as "an actual or prospective purchaser, lessee, or recipient of consumer goods. . . ."  § 13–101(c)(1).  In general, items are "goods" if they are movable at a relevant point in time.  *See* Md.Com.

Law Code Ann. § 2–105(1) ("Goods" means all things ... which are movable at the time of identification to the contract for sale ..."); § 9–105(h) ("Goods" includes all things which are movable at the time the security interest attaches ..."). Section 13–101(d) of the Consumer Protection Act defines *"[c]onsumer goods"* as "goods ... which are primarily for personal, household, family, or agricultural purposes." § 13–104(d) (emphasis added). In *Boatel Industries v. Hester,* 77 Md.App. 284, 303, 550 A.2d 389 (1988), this Court explained:

> This concept of consumer goods under the Consumer Protection Act is, for all practical purposes, the same as that in § 9–101(1) of the Maryland Commercial Code, which states that:

> Goods are

> (1) "Consumer goods" if they are used or bought for use primarily for personal, family or household purposes. . . .

There is little question that, when appellees advertised and sold the FRT plywood, they advertised and sold "goods." As appellees point out, however, they did not sell FRT plywood to appellants. They sold it to builders involved in the mass construction of homes. Only after the plywood was incorporated into the roofs of the homes were the homes sold to appellants. Thus, when appellees advertised and sold FRT plywood, they advertised and sold it to commercial buyers for commercial purposes. The plywood was not, at that point, "primarily for personal, household, family, or agricultural purposes." § 13–101(d). *Cf.* Official Comment 2 to Md.Com.Law Code Ann. § 9–109 ("Goods can fall into different classes at different times; a radio is inventory in the hands of a dealer and consumer goods in the hands of a householder").

The plywood was not transformed into "consumer goods" when the homes were sold to appellants. In fact, when it was incorporated into the dwellings and rendered unmovable, the plywood lost its status as "goods" altogether. *See generally Chlan v. KDI Sylvan Pools,* 53 Md.App. 236, 240, 452 A.2d 1259 (1982) (explaining that an in-ground swimming pool is not a good within the meaning of the U.C.C. because it is not

movable); *21st Century Properties v. Carpenter Installation,* 694 F.Supp. 148, 151 n. 2 (D.Md.1988) ("It should be noted that roofs (because of their immovable nature) apparently are not 'goods' within the meaning of the Uniform Commercial Code"). *Cf.* Rules, Regulations, Statements and Interpretations under the Magnuson–Moss Warranty Act, 16 C.F.R. § 700.1(e) (1993) (indicating that where construction materials, including roofing materials, "are at the time of sale integrated into the structure of a dwelling they are not consumer products as they cannot be practically distinguished from realty").

In short, the FRT plywood was not "consumer goods" at the point when it was advertised and sold to the builders and did not become "consumer goods" when the houses into which it was incorporated were sold to appellants. Thus, appellees could not have violated § 13–301(2)(i) and (iv) and (9)(i) in advertising the plywood. Because the FRT plywood was never "consumer goods," moreover, appellants were never "consumers" that could have been misled by the advertisements, and appellees could not have violated § 13–301(1).

### Issue III

The trial court's order of March 25, 1993, stated that "the plaintiffs concede that the claims in Count III (breach of implied warranty) were not filed within the applicable four year limitation period." Accordingly, the court dismissed Count III as to each of the four plaintiffs. The record establishes, however, that appellants Morris and Mills purchased their homes on November 3, 1987, and filed suit January 9, 1991, well within the limitations period. Neither plaintiff ever admitted that suit was filed beyond the four year period of limitations. Judge McKenna's earlier order, moreover, denied Osmose's motion to dismiss all claims for breach of implied warranty for roofs constructed of FRT plywood delivered after January 9, 1987.

Osmose alleges that it developed a chemical formulation, but that it does not sell FRT plywood, and that only "sellers" make implied warranties under the Uniform Com-

mercial Code. We reject this argument. Under the U.C.C., §§ 2–314 through 2–315, "seller" includes the manufacturer, distributor, dealer, wholesaler, or other middleman or the retailer. Osmose is clearly involved in the manufacture of FRT plywood. The plaintiffs have alleged that Osmose has marketed and sold FRT plywood under the brand name "Flame Proof LHC."

Appellants Morris and Mills allege that they purchased their townhouses in October or November 1987; that the roof is constructed of an FRT plywood manufactured by Osmose Wood Preserving, Inc.; that the builder warned the plaintiffs that the plywood is bowed and that due to reduced strength capacity it must be replaced and no one should go onto the roof for any reason; that FRT plywood was designed to retard the spread of fire under extremely high temperatures; that an acidic reaction actually begins at 130° Fahrenheit thereby causing destruction of the bonding of the plywood laminates, causing the wood to bow, darken, fracture, warp, and otherwise deteriorate; that the degradation of the roofs has resulted in substantial impairment of the structural integrity of the roofs, making them unsafe and dangerous, thereby threatening the safety of the plaintiffs and other occupants of the buildings, including those who have cause to be on the roofs; that Osmose advertised its product, "Flame Proof LHC" as suitable for use in roof trusses, beams, and interior roof decks in homes, apartments, and commercial buildings; that defendants' product is not suitable for the purposes alleged, and the statements had the capacity, tendency, or effect of deceiving or misleading consumers, including Mills and Morris; that Osmose knew that its product could deteriorate when exposed to temperatures of 130°–160° Fahrenheit, and knowingly omitted to disclose this material fact, intending that the plaintiffs rely on such omission in connection with the sale of the structures containing its FRT plywood product; that the American Plywood Association informed Osmose of the degradation problems no later than April 1987; that the dangers of FRT plywood became publicly known in 1990 through national media reports; that the plaintiffs were un-

able to discover the fraud earlier because the defendant controlled all the data concerning the product; that upon learning of the fraud, plaintiffs have diligently sought from defendant and others all information concerning the injury caused them by the FRT plywood products; that defendants impliedly warranted that FRT plywood was of merchantable quality and fit for the ordinary purposes for which it was sold; that as a result of the breach of implied warranties, the plaintiffs have sustained damages including the cost of replacement of the roofs in an amount to be determined at trial.

We hold that the plaintiffs have set forth a cause of action in Count III and the trial court erred in dismissing the claims by Morris and Mills for breach of implied warranty.

With respect to appellants Herlihy and Karbeling, the claim for breach of implied warranty remains viable only if the applicable statute of limitations is tolled pursuant to § 5–203 of the Courts and Judicial Proceedings Article of the Md.Code, which provides:

> If the knowledge of a cause of action is kept from a party by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud.

Thus, the appellants must allege that two conditions exist, namely:

1. That they have been kept in ignorance of the cause of action by the fraud of the adverse party, and

2. That they exercised ordinary diligence for the discovery and protection of their rights.

*See, Mettee v. Boone,* 251 Md. 332, 338–39, 247 A.2d 390 (1968); *Piper v. Jenkins,* 207 Md. 308, 319, 113 A.2d 919 (1955).

■ Section 5–203 of the Courts Article is a statutory exception that halts the running of the statute of limitations. The fraud alleged may be either an actual concealment of facts, or it may be of such a character as to conceal itself,

whereby the plaintiff remains in ignorance without any lack of diligence on his part. It is not necessary, to constitute a fraud, that there shall be any special effort on the part of the defendant in the way of concealment. *See Brack v. Evans*, 230 Md. 548, 187 A.2d 880 (1963).

Whether appellants' failure to discover their cause of action was due to lack of diligence, or to appellees' concealment of the alleged wrong, is a question for the trier of fact. *See O'Hara v. Kovens*, 305 Md. 280, 503 A.2d 1313 (1986). Appellants, Herlihy and Karbeling, make the same allegations of fraudulent concealment by Hoover Universal, Inc., and Hoover Treated Wood Products, as were made by Morris and Mills against Osmose. HTWP is alleged to have known of the thermal degradation of its treated plywood as of March 30, 1986 through notification by the American Plywood Association. Herlihy purchased her property September 28, 1983, and Karbeling acquired his on July 11, 1985. Limitations would not have expired until September 27, 1987 as to Herlihy, and not until July 10, 1989 as to Karbeling. Both appellants allege knowledge by HTWP, and concealment of the true facts concerning the product, for eighteen months before Herlihy's claim would have been barred by the four year statute of limitations, and thirty-eight months before Karbeling would have been precluded from filing suit.

Whether either Herlihy or Karbeling can prove their allegations under § 5–203, and thus toll the statute of limitations, raises questions of fact to be resolved by the trier of fact. We hold, however, that the allegations of fraud are sufficient to withstand the appellees' motion for dismissal. We reverse the trial court, therefore, as to Count III.

JUDGMENT AFFIRMED IN PART AND REVERSED AS TO COUNT III. REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION.

COSTS TO BE PAID ONE–HALF BY APPELLANTS AND ONE–HALF BY APPELLEES.