712 A.2d 33

Randy EDWARDS, et ux.

v.

FIRST NATIONAL BANK OF NORTH EAST.

No. 955, Sept. Term, 1997.

Court of Special Appeals of Maryland.

June 24, 1998.

A. Frank Carven, III (Brown, Brown & Brown, P.A., on the brief) Bel Air, for Appellants.

Michael C. Powell (Gordon, Feinblatt, Rothman, Hoffberger & Hollander, L.L.C., on the brief), Baltimore, for Appellee.

Argued before HARRELL, SALMON and BYRNES, JJ.

BYRNES, Judge.

Randy and Cynthia Edwards, appellants, challenge a ruling of the Circuit Court for Cecil County dismissing their claims against First National Bank of North East, appellee, in a toxic-tort groundwater contamination case. On appeal, Mrs. and Mrs. Edwards pose the following question for review, which we have rephrased slightly:

> Did the circuit court err in ruling that the limited exemption from liability granted to lenders under Md.Code (1997 Cum. Supp.), § 4–401(i)(2)(i)(2) of the Environment Article ("Env.") abrogates Maryland's common law causes of action for negligence, nuisance, trespass, and strict liability against a lender? [1]

We answer the question presented "yes." Accordingly, we reverse the judgment in favor of First National Bank of North East and remand for further proceedings.

---

1. Effective February 27, 1997, Env. § 4–401(i) was amended. Env. § 4–401(i)(2)(ii), which had contained the language primarily at issue in this case, was renumbered, as a consequence of other amendments, to appear at Env. § 4–401(i)(2)(i)(2). The Bank's motion to dismiss was filed before the February 27, 1997 amendments, as was the Edwards's opposition memorandum. The parties and the trial court were all aware of the amendments to Env. § 4–401(i) by the time of the hearing in circuit court, however. Nevertheless, the question presented in appellants' brief uses the subsection reference as it appeared prior to the amendment. We have rephrased the question to use the statutory section number as it appeared after February 27, 1997.

## FACTS

Randy and Cynthia Edwards are the owners of residential real property in North East, Maryland known as 505 Mechanics Valley Road. Their property is adjacent to and downgrade from commercial property known as 513 Mechanics Valley Road. For approximately twenty years, the 513 Mechanics Valley Road site was used for a gasoline service station. During part of that time, from 1981 until 1994, the property was owned by Jacqueline C. Yerkes. Mrs. Yerkes and her husband added a mini-market to the gasoline service station. The property came to be called the "T & C Mini Market."

First National Bank of North East ("the Bank") held a mortgage on the T & C Mini Market property. When Mrs. Yerkes defaulted on the mortgage, the Bank foreclosed on the property. Thereafter, on May 10, 1994, it purchased the property at the foreclosure sale and took possession of it. A few weeks later, the Bank conducted "tank tightness tests" on two 6,016 gallon underground storage tanks ("USTs") and one 3,000 gallon UST on the property. The tanks passed all of the tests and were judged to be tight.

The Bank then contracted with Edwards Service Station Equipment, Inc. ("ESSE") to remove the USTs. ESSE did so on October 24, 1994, under the watchful eyes of Maryland Department of the Environment ("MDE") employees. Removal of the USTs produced a strong smell of petroleum. Tests that were later performed on the property by MDE revealed the presence of petroleum byproducts in the soil at levels greater than permitted by law. MDE arranged for three testing wells to be installed on the T & C Mini Market property and ordered further testing to be undertaken. Those tests showed the continued presence of petroleum byproducts in the land.

In the meantime, on May 5, 1994, shortly before the Bank took possession of the T & C Mini Market property, Mr. and Mrs. Edwards installed a new deep well on their property. They did so in part because Mrs. Edwards was operating a day care center in their home and she needed to comply with

certain local health regulations. The new well was approved by the Cecil County Health Department on September 9, 1994, after officials "completed multiple tests and personal inspections."

In late November, 1994, Mr. and Mrs. Edwards noticed the smell of gasoline in their house. When the smell intensified, they had their well-water tested. Tests performed on January 23, 1995 came up positive for PH-petroleum hydrocarbons. The MDE performed additional tests that confirmed the presence of petroleum byproducts in the Edwards's well.

On August 20, 1996, Mr. and Mrs. Edwards filed suit for damages against the Bank and against ESSE for injury to their real and personal property, in the Circuit Court for Cecil County. They pleaded causes of action against both defendants for violation of Env. § 4–409, negligence, nuisance, trespass, and strict liability. On December 20, 1996, the Bank filed a motion to dismiss for failure to state a claim for which relief could be granted, pursuant to Md. Rule 2–322. Mr. and Mrs. Edwards opposed the motion, and the matter was set in for a hearing before the trial court on April 9, 1997.

In its memorandum of law in support of its motion to dismiss and at the hearing before the trial court, the Bank argued that it was exempt from liability under Env. § 4–409(a) by the protections conferred by Env. § 4–401(i)(2)(i)(2) and, moreover, that the common law causes of action against it were preempted by Env. § 4–401(i)(2)(i)(2). After hearing argument of counsel, the trial court granted the Bank's motion, from the bench. It subsequently issued a written order dismissing the Bank from the case and entering final judgment against Mr. and Mrs. Edwards in favor of the Bank upon a finding that "there is no just reason for delay," under Md. Rule 2–602(b).[2] Mr. and Mrs. Edwards then noted this appeal.

---

2. Even when the trial court has fulfilled the written certification requirement of Md. Rule 2–602(b), as it did in this case, the trial judge's exercise of discretion in finding "no just reason for delay" is subject to

## STANDARD OF REVIEW [3]

 On review of a judgment granting a motion to dismiss under Md. Rule 2–322, we must assume as true all well-

---

review; indeed, because the proper exercise of that discretion *vel non* is an issue of appellate jurisdiction, it may be reviewed *nostra sponte. Tharp v. Disabled American Veterans,* 121 Md.App. 548, 710 A.2d 378 (1998); *Harford Sands v. Levitt,* 27 Md.App. 702, 706, 343 A.2d 544 (1975). In exercising its permitted discretion under Md. Rule 2–602(b), the trial judge "should ... balance [the] 'exigencies of the case ... with the policy against piecemeal appeals and then only allow a separate appeal ...' if this is one of 'the very infrequent harsh case[s]' " in which such an appeal is warranted. *Starfish Condominium Ass'n v. Yorkridge Service Corp.,* 292 Md. 557, 569, 440 A.2d 373 (1982)(quoting *Diener Enterprises, Inc. v. Miller,* 266 Md. 551, 556, 295 A.2d 470 (1972)).

In the case *sub judice,* the record does not memorialize the thought process employed by the trial judge in deciding to certify the judgment as final. Our authority under Md. Rule 8–602(e)(1) to enter a final judgment if we determine that a lower court had discretion to do so under Md. Rule 2–602(b), but failed to do so, implicitly empowers us to decide *ab initio* whether the certification of a final judgment in a given case is permissible, as a matter of policy. We find that it is in this case. The claims against the Bank that appellants seek to resurrect, if resurrected, are not such as may be rendered moot. *Compare, Huber v. Nationwide Ins. Co.,* 347 Md. 415, 701 A.2d 415 (1997). More important, the common law claims against ESSE will almost certainly be affected by the lower court's ruling on preemption, as ESSE is alleged to have been acting as an agent of the Bank; until that issue is resolved on appeal, the scope of ESSE's potential liability cannot be known, and full resolution of the claims against it is not possible. This exigency outweighs the drawbacks attendant to a piecemeal appeal.

3. The Bank attached two exhibits to its motion to dismiss: an affidavit of J. David McDaniel, its Chairman and Chief Executive Officer, and a letter by Herbert M. Meade, Chief of MDE's Compliance/Remediation Division of the Oil Control Program. In Mr. McDaniel's affidavit, he attests that ESSE was an "independent contractor." This fact, which is contested by Mr. and Mrs. Edwards, had no bearing on the court's ruling on the motion to dismiss. In his letter, Mr. Meade states that, under the MDE's interpretation of Env. § 4–401, the Bank is not a "Person responsible for the discharge." It does not appear that Mr. and Mrs. Edwards took issue with that statement, at least within the context of the preemption issue raised by the Bank in its motion. Moreover, the statement is relevant only to the statutory claim which, as we shall explain, the parties agree was properly dismissed. It, too, had no bearing on the trial court's ruling with respect to the common law counts. For these reasons, it is apparent that the court did not treat the Bank's motion to dismiss as a motion for summary judgment under Md. Rule 2–322(c), even though it was filed with attachments that addressed facts outside of the complaint.

pleaded facts in the complaint and all reasonable inferences that may be drawn from them. *Stone v. Chicago Title Ins. Co. of Md.*, 330 Md. 329, 333, 624 A.2d 496 (1993). We then decide whether the well-pleaded allegations of fact in the complaint reveal any set of facts that would entitle the plaintiff to relief. If so, the motion to dismiss was improperly granted. *Shah v. HealthPlus*, 116 Md.App. 327, 331–32, 696 A.2d 473, cert. denied, 347 Md. 682, 702 A.2d 291 (1997); *Morris v. Osmose Wood Preserving*, 99 Md.App. 646, 652–53, 639 A.2d 147 (1994), *aff'd in part, rev'd in part*, 340 Md. 519, 667 A.2d 624 (1995); *Tafflin v. Levitt*, 92 Md.App. 375, 379, 608 A.2d 817 (citing *Flaherty v. Weinberg*, 303 Md. 116. 135–36, 492 A.2d 618 (1985)), *cert. denied*, 328 Md. 447, 614 A.2d 974 (1992).

## DISCUSSION

Soon after Mr. and Mrs. Edwards noted their appeal in the case *sub judice*, the Court of Appeals filed its opinion in *JBG/Twinbrook Metro Ltd. v. Wheeler*, 346 Md. 601, 697 A.2d 898 (1997). In that case, the Court addressed, *inter alia*, the scope of the private remedy established by Env. § 4–409(a). That section provides:

> The person responsible for the oil spillage shall be liable to any other person for any damage to his real or personal property directly caused by the spillage.

In *JBG/Twinbrook*, a property owner sued his neighbor for damages caused by percolation of gasoline into the plaintiff's land from the neighbor's adjacent gasoline station. The Court examined the legislative history of the Water Pollution Control and Abatement Act, Md.Code §§ 4–401 through 4–420 of the Environment Article (the "Act"), and Env. § 4–409 in particular, and held that the private cause of action created by § 4–409(a) did not apply to the case. Specifically, it found that "the 'oil spillage' referred to in [that section] is a spillage or discharge from a vessel, ship, or boat,'" *id.* at 613, 697 A.2d 898, and "does not apply to a discharge from an UST . . ." *Id.* at 618, 697 A.2d 898.

In light of the Court's decision in *JBG/Twinbrook,* Mr. and Mrs. Edwards concede, as they must, that the private remedy created by Env. § 4-409(a) is not available to them and that the lower court correctly dismissed their claim under that statute, albeit for a different reason. They do not contest the dismissal of that claim. They maintain, however, that the circuit court erred in ruling that the Water Pollution Control and Abatement Act in its entirety, and Env. § 4-401(i)(2)(i)(2) specifically, abrogated their common law causes of action for negligence, nuisance, trespass, and strict liability in tort.

Env. § 4-401 sets forth definitions for certain terms that are used in the Act. "Person responsible for the discharge," one such term, is defined at Env. § 4-401(i)(1) to include:

(i) The owner of the discharged oil [4];

(ii) The owner, operator, or person in charge of the oil storage facility, vessel, barge, or vehicle involved in the discharge at the time of or immediately before the discharge; and

(iii) Any other person who through act or omission causes the discharge.

The statutory language at issue in this case appears in Env. § 4-401(i)(2), which defines those who do ***not*** fall into the category of "Person responsible for the discharge:"

(i) A person who, without participating in the management of an underground oil storage tank, and who otherwise is not engaged in petroleum production, refining, or marketing, holds indicia of ownership in an underground oil storage tank primarily to protect its security interest in that underground oil storage tank if that person [ ... ]

2. Abandoned that underground oil storage tank under regulations of the Department within 180 days of acquiring the tank through foreclosure or other means. [5]

---

**4.** "Oil" is defined to include, *inter alia,* petroleum, petroleum by-products, and gasoline. Env. § 4-401(g).

**5.** The February 27, 1997 amendment to Env. § 4-401(i)(2) added the following to those who are not included in the category of "Person not responsible for the discharge:"

The Bank contends that, on the facts alleged in the complaint and within the meaning of Env. § 4–401(i)(2)(i)(2), it "abandoned" the USTs at the T & C Mini Market site within 180 days of acquiring the property through foreclosure and thus it is not a "Person responsible for the discharge" under the Act. It argues further that because the legislative intent behind Env. § 4–401(i)(2)(i)(2) is, to use its words, "to protect a foreclosing lender from liability if the lender removes an underground storage tank within 180 days following foreclosure," the trial court properly ruled that the Act abrogated all common law causes of action against it arising out of contamination of adjacent property by oil kept in the USTs on the T & C Mini Market property. We disagree.

---

(ii)A holder of a mortgage or deed of trust who acquires title to a property that is subject to a corrective action plan approved by the Department under this subtitle provided that the holder complies with the requirements, prohibitions, and conditions of the plan;

(iii) Subject to paragraph (3) of this subsection, a lender who extends credit for the performance of removal or remedial actions conducted in accordance with requirements imposed under this title who:

1. Has not caused or contributed to a discharge of oil; and

2. Previous to extending that credit, is not a person responsible for the discharge at the site; or

(iv) Subject to paragraph (3) of this subsection, a lender who takes action to protect or preserve a mortgage or deed of trust on a site or a security interest in property located on a site at which a discharge of oil has occurred, by stabilizing, containing, removing, or preventing the discharge of oil in a manner that does not cause or contribute to a discharge of oil if:

1. The lender provides advance written notice of its actions to the Department or in the event of an emergency in which action is required within 2 hours, provides notice by telephone;

2. The lender, previous to taking the action, is not a person responsible for the discharge at the site; and

3. The action does not violate a provision of this article.

The amendment also added a new subsection, at Env. § 4–401(i)(3), which provides:

A lender taking action to protect or preserve a mortgage or deed of trust or security interest in property located on a site, who causes or contributes to a discharge of oil shall be liable solely for costs incurred in response to the discharge which the lender caused or to which the lender contributed unless the lender was a person responsible for the discharge before acquiring a mortgage, deed of trust, or security interest in the site or property located on the site.

■ In determining the legislative intent of a statute, " '[t]he primary source ... is, of course, the language of the statute itself.' " *State v. Pagano*, 341 Md. 129, 133, 669 A.2d 1339 (1996)(citing *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 73, 517 A.2d 730 (1986)); *Claggett v. State*, 108 Md.App. 32, 40, 670 A.2d 1002, *cert. denied*, 342 Md. 330, 675 A.2d 992 (1996). "In some circumstances, [the courts] need not look beyond the statutory language to determine the legislative purpose. 'Sometimes the language in question will be so clearly consistent with apparent purpose (and not productive of any absurd result) that further research will be unnecessary.' " *Pagano*, 341 Md. at 133, 669 A.2d 1339 (quoting *Kaczorowski v. City of Baltimore*, 309 Md. 505, 515, 525 A.2d 628 (1987)).

■ The Bank urges us to construe Env. § 4–401(i)(2)(i)(2) broadly, as a general grant of immunity from suit in favor of commercial lenders. Yet, the statutory language states only that, under certain limited and defined circumstances, a lender is not a "Person responsible for the discharge." To the extent that a lender could face exposure to liability as a "Person responsible for the discharge," within the meaning of the Act, its exclusion from that category under Env. § 4–401(i)(2)(i)(2) would insulate it. To interpret Env. § 4–401(i)(2)(i)(2) to confer blanket immunity for lenders against common law liability for groundwater contamination, we would have to disregard the narrowly circumscribed language of the statute and illogically generalize its meaning. In interpreting the language of a statute, we must apply common sense and avoid unreasonable constructions. *Armstead v. State*, 342 Md. 38, 56, 673 A.2d 221 (1996). We decline to find in the limited and specific exclusion spelled out in Env. § 4–401(i)(2)(i)(2) the overarching and sweeping meaning that the Bank suggests.

In addition, Env. § 4–401(i)(2)(i)(2) must be read in conjunction with the remainder of the Act, *see County Commissioners v. Bell Atlantic*, 346 Md. 160, 178, 695 A.2d 171 (1997), which includes a purpose clause expressly prohibiting any construc-

tion of the Act so as to abrogate or preempt common law remedies. Env. § 4–403, entitled "Construction and purpose of subtitle; remedies additional and cumulative," is explicit:

> ... It is the purpose of this subtitle to provide additional and cumulative remedies to prevent, abate, and control the pollution of the waters of the State. This subtitle may not be construed to abridge or alter rights of action or remedies in equity under existing common law, statutory law, criminal or civil, nor may any provision of this subtitle, or any act done pursuant to it, be construed as estopping any person, as riparian owner or otherwise, in the exercise of his rights in equity, under the common law, or statutory law to suppress nuisances or abate pollution.

The meaning of Env. § 4–403 is plainly apparent from its language. The words of the statute reflect the General Assembly's intention that the Act, which comprises subtitle 4 of the Environment Article, *not* be read to affect common law remedies. We need not search further for statutory meaning:

> When the language of a statute is plain and unambiguous, there is usually no need for a court to inquire further [to ascertain the legislative intent]. *Board of Trustees of Md. State Retirement & Pension Sys. v. Hughes,* 340 Md. 1, 7–8, 664 A.2d 1250, 1253 (1995). If the language of the statute is clear and expresses the intention of the legislature, it must be construed to give effect to that intention regardless of the consequences, even though such effect may cause a hardship. *Schmeizl v. Schmeizl,* 186 Md. 371, 375, 46 A.2d 619, 621 (1946). Simply put, a court construing an unambiguous statute must view the law as it is, and not as it might wish it to be. *Department of Economic Dev. v. Taylor,* 108 Md.App. 250, 277, 671 A.2d 523, 537, *cert. granted,* 343 Md. 332, 681 A.2d 68 (1996). *See In re Adoption/Guardianship No. A91–71A,* 334 Md. 538, 557, 640 A.2d 1085, 1095 (1994).

*Brzowski v. Md. Home Improvement,* 114 Md.App. 615, 627, 691 A.2d 699, *cert. denied,* 346 Md. 238, 695 A.2d 1227 (1997). Moreover,

> Maryland courts adhere to the policy that statutes are not to be construed to alter the common-law by implication. The reason for this protection of common-law principles from statutory erosion is based on Article 5 of the Maryland Declaration of Rights, which guarantees to Maryland citizens the common-law of England. Thus, there is a presumption against statutory preemption of the common-law. The presumption is easily dissipated if the statute expressly overrides a common-law principle.

*Hardy v. State*, 301 Md. 124, 131–32, 482 A.2d 474 (1984) (citations omitted). *See also Richwind v. Brunson*, 335 Md. 661, 672, 645 A.2d 1147 (1994) (recognizing "well-settled principle in Maryland that, in construing a statute, [appellate courts] assume that the statute was not intended to modify, nullify, or supersede the common law of the State absent any clear indication to the contrary."); *Lutz v. State*, 167 Md. 12, 15, 172 A. 354 (1934). In this case, not only does the statute in question not expressly override the common law, it expressly states that it shall not be interpreted to override the common law.

Without making mention of Env. § 4–403 in its brief, the Bank argues that Env. § 4–401(i)(2)(i)(2) must be interpreted broadly so as to protect lenders against common law liability for two reasons: first, any other interpretation of the subsection would render it superfluous, especially in light of the Court's holding in *JBG/Twinbrook*; and second, the legislative history surrounding the passage of the section evidences an intention on the part of the General Assembly to extend a broad grant of immunity to commercial lenders.

We agree that statutes should not be read so as to render their language superfluous. *See Bell Atlantic*, 346 Md. at 178, 695 A.2d 171; *City of Baltimore v. Hackley*, 300 Md. 277, 283, 477 A.2d 1174 (1984). We also agree that, under *JBG/Twinbrook*, the protection afforded by Env. § 4–401(i)(2)(i)(2) cannot insulate lenders from liability under the private remedy created by Env. § 4–409(a) in cases involving contamination by USTs because, as the Court of Appeals made plain, § 4–409(a) does not apply to situations of that

sort, in any event. We disagree, however, that to give meaning to Env. § 4–401(i)(2)(i)(2), we must read it to abrogate common law causes of action against lenders, in direct contravention of the statutory purpose stated in Env. § 4–403. If the term "Person responsible for discharge" were used only in Env. § 4–409(a), there might be some logical foundation to the Bank's argument. In fact, its use is not so confined. The term is found in several subsections of the Act including, most notably, Env. § 4–405, which empowers the MDE to bring suit for remediation and clean up costs:

> . . . Any person who is determined to be responsible for the discharge or spillage of [oil, which is defined to include petroleum and petroleum by-products] shall be personally and/or severally responsible to immediately clean up and abate the effects of the spillage and restore the natural resources of the State. The Department shall assume control of any discharge or spill situation when it determines that the person responsible for the discharge is not acting promptly in a manner appropriate to remove, mitigate, control, or rectify the spill. If the Department believes instituting suit is advisable, it shall turn over to the Attorney General all pertinent information and data. The Attorney General shall then file suit against the person causing the condition. The person shall be jointly and severally liable for the reasonable cost of rehabilitation and restoration of the resources damaged and the cost of eliminating the condition causing the damage, including the environmental monetary value of such resources as established by regulation.

Env. § 4–405(c).

The legislative history that the Bank cites and the policy observations that it makes are not persuasive. To be sure, the 1992 enactment of what is now Env. § 4–401(i)(2)(i)(2) and the 1997 amendments to that section evidence legislative concern that commercial lenders not be disinclined to extend mortgages for fear of incurring legal responsibility and liability under the Act when they must take possession of mortgaged property to protect a security interest. Indeed, Env. § 4–

401(i)(2)(i)(2) addresses those concerns by protecting lenders from remediation and clean up suits brought by the MDE when certain conditions are satisfied. The legislative history does not evidence an express or even an implied intention on the part of the General Assembly to abrogate, abolish, or preempt common law remedies against commercial lenders, however.

▇ Finally, the Bank argues that we should affirm the circuit court's dismissal of the nuisance, trespass, negligence, and strict liability in tort claims against it because the facts alleged in the complaint do not support those causes of action. This argument was not raised in or decided by the circuit court. Accordingly, it is not properly before us for review. Md. Rule 8–131(a); *Moats v. City of Hagerstown*, 324 Md. 519, 524–25, 597 A.2d 972 (1991); *Friedman v. Clark*, 252 Md. 26, 31, 248 A.2d 867 (1969); *cf. Davis v. DiPino*, 337 Md. 642, 655 A.2d 401 (1995) (appellate court should not review whether plaintiff failed to state claim upon which relief can be granted when the only motion filed and the only motion ruled upon was for summary judgment).

**JUDGMENT REVERSED. CASE REMANDED TO CIRCUIT COURT FOR CECIL COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**