741 A.2d 1088

**James Ralph HUFFMAN**

v.

**STATE of Maryland.**

**No. 28, Sept. Term, 1999.**

Court of Appeals of Maryland.

Dec. 7, 1999.

George E. Burns, Jr., Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

J. Joseph Curran, Jr., Atty. Gen. of Maryland (Rachel Marblestone Kamins, Asst. Atty. Gen., on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

HARRELL, Judge.

James Ralph Huffman, petitioner, was convicted at a bench trial in the Circuit Court for Harford County of seven violations of Maryland Code (1992, 1998 Repl.Vol.), Business Regulation Article (BR), § 8–601 (acting as [a] contractor or subcontractor or selling a home improvement without [a] license) and seven violations of Maryland Code (1992, 1998 Repl.Vol.), BR § 8–605 (abandonment of or failure to perform a contract). Petitioner appealed to the Court of Special Appeals contending that the circuit court erred in convicting him of seven violations of BR § 8–601.[1] That Court rejected petitioner's

---

1. Unless otherwise provided, all statutory references are to Maryland Code (1992, 1998 Repl.Vol.), Business Regulation Article. Also, unless otherwise provided, we shall confine our consideration and discussion to the seven convictions of BR § 8–601.

argument and affirmed the judgments of the circuit court. We granted certiorari to determine, under the particular facts of this case, what the appropriate unit of prosecution is under BR § 8–601. We shall affirm the judgment of the Court of Special Appeals.

Petitioner presents us with a single issue to consider, which we have rephrased non-substantively as follows: [2]

whether acting as a home improvement contractor without a license on seven different occasions during a fifteen month period constitutes one continuing violation of BR § 8–601 or a separate violation for each transaction entered into and partially performed during that time period.

## I.

Petitioner's bench trial proceeded on the basis of a not guilty plea/agreed statement of facts. We shall reduce and restate the relevant facts for the sake of clarity. Between 11 September 1995 and 18 December 1996, petitioner entered into home improvement contracts with eight different home-owners in Harford County.[3] During that period, petitioner was not licensed by the Maryland Home Improvement Commission (the "Commission") to perform home improvements, though required to be so. In each contract, petitioner agreed to build a deck or garage onto the customer's existing home. Each customer gave petitioner an advance deposit and agreed to pay an additional sum upon completion of the work. The

---

**2.** Petitioner's certiorari question to this Court was framed as: "Did the court below err in concluding that Petitioner could be separately convicted of acting without a license (Business Regulation § 8–601) for each contract entered into?"

**3.** The following is a list of petitioner's aggrieved customers and the dates of the pertinent written contracts: Ernest and Kaye Owens—11 September 1995; Tillman Bach—13 February 1996; Steven and Christine Rosenberger—22 April 1996; Walter Makowicz—1 May 1996; David Sakalas—3 May 1996; Richard and Beth Squillaciotti—25 May 1996; and Daniel Kiesling—18 December 1996. The record before us reveals only that the eighth case, case number 97C0503, involved a customer with the surname Moore.

deposits ranged from $1200 to $7050. Additional payments were solicited thereafter by petitioner, either as inducements for him to commence work or as a form of progress payments. Petitioner began work under each contract, but ultimately failed to complete each job. He also failed to return any of the payments made by the homeowners.

The homeowners filed complaints with the Maryland Home Improvement Commission. After an investigation, the Commission found, in each case, that petitioner failed to perform under the home improvement contracts and that he did not obtain a contractor license from the Commission before entering into any of the contracts. The Commission filed an Application For Statement of Charges with the District Court of Maryland sitting in Harford County.

Petitioner was charged ultimately in the District Court in eight separate cases of violating BR § 8–601. He prayed jury trials and the cases were transferred to the Circuit Court for Harford County. The State entered a nollo prosequi in the eighth case before trial commenced, leaving seven cases to be tried. Each case represented one of petitioner's seven transactions with the seven remaining customers. The circuit court consolidated the first six cases for trial. The seventh case was tried separately. The court found petitioner guilty of violating BR § 8–601 in all seven cases.

In each of the first six cases, the court sentenced petitioner to two years in prison, with four months suspended.[4] The court ordered the sentences to be served consecutively. In addition, it ordered five years probation and restitution in the aggregate amount of $20,340. In the seventh case, the court sentenced petitioner to two years and six months incarceration, all suspended, and ordered him to pay an additional $5,350 in restitution. On direct appeal and in an unreported

---

4. Before sentencing, the court noted that petitioner had two previous convictions for violating of BR §§ 8–601 and 8–605. For his first conviction on 2 April 1997, petitioner served two months in prison and paid restitution. For his second conviction on 16 July 1997, petitioner served four months in prison and paid restitution.

opinion, the Court of Special Appeals affirmed, holding that the plain language of BR § 8–601 established that each act or offer to act by an unlicensed contractor is a separate violation of the statute.

## II.

■ Petitioner's sole contention is that he was improperly prosecuted and convicted of seven violations of BR § 8–601. He argues that the circuit court should have convicted him of a single violation of the statute because acting as a contractor without a license, the prohibited behavior under BR § 8–601, is a continuing offense. In support of his position, petitioner advances a perplexing argument. He begins by observing that the General Assembly enacted BR § 8–601 to protect the public. *Harry Berenter, Inc. v. Berman*, 258 Md. 290, 294, 265 A.2d 759, 762 (1970)("the Maryland Home Improvement Law is a regulatory statute for the protection of the public"). Because the legislature enacted § 8–601 for the protection of the public at large, petitioner asserts that the trial court erred in using individual victims as the unit of prosecution for his misconduct. Petitioner urges us to hold that the proper unit of prosecution is the singular conduct of acting as a contractor without holding the required license to do so. Under petitioner's interpretation, he violated BR § 8–601 when he originally established his current business and that single violation continued during the fifteen month period until he came to the attention of the authorities. As petitioner's suggestion is, at best, a strained interpretation of the statute, we shall reject it. *Potter v. Bethesda Fire Dep't.*, 309 Md. 347, 353, 524 A.2d 61, 64 (1987).

■ In determining the appropriate unit of punishment for violations of statutory provisions, the central question is one of legislative intent. *Randall Book Corp. v. State*, 316 Md. 315, 324, 558 A.2d 715, 720 (1989). We have explained that "whether a particular course of conduct constitutes one or more violations of a single statutory offense depends upon the appropriate unit of prosecution of the offense and this is

ordinarily determined by reference to the legislative intent." *Richmond v. State,* 326 Md. 257, 261, 604 A.2d 483, 485 (1992); *Brown v. State,* 311 Md. 426, 432, 535 A.2d 485, 488 (1988). Every quest to discover and give effect to the objectives of the legislature begins with the text of the statute. *In re Victor B.,* 336 Md. 85, 94, 646 A.2d 1012, 1016 (1994). If the intent of the legislature is clear from the words of the statute, our inquiry normally ends and we apply the plain meaning of the statute. *State v. Montgomery,* 334 Md. 20, 24, 637 A.2d 1193, 1195 (1994). In other words, we will approach our analysis from a common sense perspective, seeking to give the statutory language its ordinary meaning. *See United States v. Universal Corp.,* 344 U.S. 218, 221, 73 S.Ct. 227, 229, 97 L.Ed. 260, 264 (1952). In furthering the identified legislative objectives, we avoid giving the statute a strained interpretation or one that reaches an absurd result. *Briggs v. State,* 348 Md. 470, 477, 704 A.2d 904, 908 (1998).

With these time-honored principles in mind, we turn to the statute at issue to discern the unit of prosecution that the legislature intended. BR § 8–601, states, in pertinent part:

(a) *Contractor*—Except as otherwise provided in this title, a person may not act or offer to act as a contractor in the State unless the person has a contractor license.

It is evident from the language that a violation of BR § 8–601 requires two elements. An individual must act[5] as a contractor at a time when the individual does not hold a contractor license.

Petitioner contracted to build a deck for the Owens family on 11 September 1995 and partially performed the undertaken construction before defaulting. More than five months later, on 13 February 1996, petitioner contracted to build a deck for Tillman Bach and partially performed that undertaking before quitting the job. Five additional contracts followed, each with

---

**5.** We do not consider the alternative offered in the statute—"or offer to act" as the agreed facts of the instant case demonstrate that petitioner's conduct as to each homeowner had proceeded beyond the offerance stage.

a different customer. Five starts and stops ensued. We cannot accept petitioner's construction that these seven obviously separate and independent actions serve as one instance of acting as an unlicensed contractor.

Petitioner may be correct in his admission that he could have been prosecuted for one count of violating BR § 8–601 for the act of setting up his business without holding a license, but his acknowledgment does not go far enough. The State could have prosecuted, and did prosecute, petitioner for the seven transactions that he entered while he was an unlicensed contractor and it had the statutory authority to do so under BR § 8–601. Approaching customers, entering into home improvement contracts, and starting construction are all activities within the plain meaning of to "act . . . as a contractor." We hold that when an unlicensed contractor enters into seven distinct home improvement agreements and partially performs each agreement, each transaction is a violation of BR § 8–601 and may be separately prosecuted.

The definition of "contractor" included in the Maryland Home Improvement Law supports using each customer transaction as a separate unit of prosecution. BR § 8–101(c) defines "contractor" as "a person who performs or offers or agrees to perform a home improvement for an owner." The General Assembly's use of the singular articles "a" and "an" before "home improvement" and "owner," respectively, clearly indicates the legislature envisioned each transaction with a separate owner to be an independent act by a contractor. When petitioner agreed to build "a" deck or garage for "an" owner, petitioner was acting as a "contractor." As petitioner did not have a contractor license when he entered the agreement, he violated BR § 8–601. Each subsequent agreement with a different owner constituted a separate act as a contractor and a violation of BR § 8–601. To suggest otherwise ignores the plain language of BR § 8–101(c) and the fundamental rules of grammar.

To further examine our conclusion that the legislature intended to punish each separate transaction as a separate

offense, we must examine the statute "in the context within which it was adopted." *Motor Vehicle Admin. v. Mohler*, 318 Md. 219, 225, 567 A.2d 929, 934 (1990). BR § 8–601 is part of the Maryland Home Improvement Law which was originally enacted in 1962.[6] Chapter 133, Acts of 1962. The title of the original statute explained that the legislature created the Maryland Home Improvement Law with the intention of:

> providing generally for the regulation of the home improvement business of all persons in this State, establishing a system of licensing certain contractors and salesman under a new administrative agency to be known as the Maryland Home Improvement Commission; ... [and] *providing criminal penalties regarding home improvement transactions.*

Chapter 133, Acts of 1962. (Emphasis added). The legislature's choice of language persuades us that it sought to punish future offenders on a transactional basis. The thrust of the statutory scheme indicates that the legislature was not only broadly concerned with the activities of home improvement contractors (licensed and unlicensed), but that it was also narrowly focused on home improvement transactions that contractors initiated. As the legislature explicitly stated that it enacted the Maryland Home Improvement Act for the purpose of providing criminal penalties for home improvement transactions, we will not ignore this manifest declaration of legislative intent. *See Edwards v. First Nat. Bank of North East*, 122 Md.App. 96, 106, 712 A.2d 33, 38 (1998).

### III.

Petitioner offers a series of cases to support his contention that the circuit court should have convicted him of only one violation of BR § 8–601. The first cases cited by petitioner are *Reddick v. State*, 219 Md. 95, 148 A.2d 384 (1959) and

---

**6.** The Business Regulation Article of the Annotated Code of Maryland was recodified in 1992. The language of § 8–601 is derived without relevant change from former Maryland Code (1957, 1983 Repl.Vol.) Article. 56, §§ 246, 261(b)(3), and 268(b)(1) & (2).

*People v. Hays*, 234 Cal.App.3d Supp. 22, 286 Cal.Rptr. 462 (1991). The defendant in *Reddick* had been convicted of eight counts of forgery. On appeal to this Court, Reddick argued that his conviction should be reversed because the State failed to name a victim in the indictment. He reasoned that an intent to defraud was a required element of the forgery charge and without a specific victim named in the indictment, the State could not show that he had the requisite intent. We affirmed Reddick's conviction, holding that it is unnecessary for the State to plead or prove that a defendant intended to defraud a particular person in order to satisfy the intent to defraud element. An intent to defraud the general public was enough to satisfy the applicable pleading requirements. *Reddick*, 219 Md. at 99, 148 A.2d at 386.

In a comparable holding, a California intermediate appellate court in *People v. Hays*, 286 Cal.Rptr. 462 (1991), rejected a per se rule which stated that a violation of a contractor licensing statute was a victimless crime. The specific issue in the case was whether a victim of a fraudulent contracting scheme was entitled to restitution under California's statute. The trial court found, as a matter of law, that acting as a contractor without a license was a victimless crime and denied restitution. Based in part on the consumer protection purpose underlying the statute, the appellate court vacated the trial court's decision. The Court held that the question of whether the crime of acting as a contractor required a victim was one of fact to be determined on a case by a case basis. *Hays*, 286 Cal.Rptr. at 464.

■ Based on *Reddick* and *Hays*, petitioner infers that BR § 8–601 can be violated when an offer is made to the general public, thus making unnecessary the identification of a specific victim. Petitioner argues that "the inevitable conclusion is that a statute which protects the public at large and is not violated only when there is a specific victim cannot have victim [sic] as its unit of prosecution." The implication of petitioner's argument is that the State is somehow foreclosed from prosecuting petitioner for each transaction that he entered into

while he was unlicensed because the State potentially could prosecute him for making an offer to the general public. Petitioner's argument fails to address the issue in the present case. We are not called upon to determine whether the State could prosecute an unlicensed contractor for making an offer to the general public. Our holding confronts the facts before us. When an unlicensed contractor enters agreements with seven different customers or victims, receives advance payments, commences work, and fails to complete the work, he may be prosecuted for seven violations of BR § 8–601. *Reddick* and *Hays* do not bear on the issue before us.

■ Petitioner also cites a pair of out-of-state cases in which courts, interpreting criminal statutes, held that the statutes at issue created continuing offenses. In an effort to show that a violation of BR § 8–601 is a continuing offense, petitioner attempts to analogize the facts of the present case to those in the out-of-state cases. For reasons that we explain below, we are not convinced by petitioner's argument.

In *State v. Carlisle*, 28 S.D. 169, 132 N.W. 686 (1911), the Supreme Court of South Dakota interpreted a statute that prohibited "practicing dentistry" without a license. The Court held that the term "practicing dentistry" indicated that one violation could extend over a period of time and subsume a multitude of acts. *Carlisle*, 132 N.W. at 687. Based on this interpretation, the Court decided the specific acts of dentistry performed on multiple victims consisted of only one violation of the charged offense. *Id.* In addition, in *Wilson v. Commonwealth*, 119 Ky. 769, 82 S.W. 427 (1904), the Court of Appeals of Kentucky reached the same conclusion. The defendant in *Wilson* had been convicted by the trial court of three counts of "practicing dentistry without a certificate" based on his performance of dental surgery on three different patients. *Wilson*, 82 S.W. at 428. The Court reversed two of the three convictions because it resolved that "practicing dentistry without a license" was a continuing offense. *Id.*

We are not persuaded by the *Carlisle* or *Wilson* cases. As we have already stated, our primary task in a unit of prosecu-

tion analysis is to find and give effect to the legislative intent underlying the statute. *Richmond v. State,* 326 Md. at 261, 604 A.2d at 485; *Randall Book Corp. v. State,* 316 Md. at 324, 558 A.2d at 720; *Brown v. State,* 311 Md. at 432, 535 A.2d at 488. *Carlisle* and *Wilson* do not enlighten us as to the intent of the legislature that enacted the Maryland Home Improvement Law. The subject matter of the statutes in those cases is completely different from the statute in the case at hand. Most importantly, the language of the statutes in *Carlisle* and *Wilson* is unlike that of BR § 8–601. The prohibited act in both *Carlisle* and *Wilson* was the unlicensed "practicing of dentistry." In the present case, by contrast, we are not faced with a bar against "practicing contracting" without a license. Undoubtedly, in the past, we have used the reasoning of out-of-state cases interpreting similarly worded statutes as persuasive authority. *See St. Joseph Hosp. v. Quinn,* 241 Md. 371, 377, 216 A.2d 732, 735 (1966); *see also Harris v. State,* 331 Md. 137, 156–57, 626 A.2d 946, 956 (1993). Here, however, we are not dealing with similarly worded statutes. Due to the obvious distinctions, petitioner's authorities do not convince us that a violation of BR § 8–601 is a single, continuous offense.[7]

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

---

**7.** In his brief, petitioner attempts to analogize the crime of acting as a contractor without a license to the inchoate offense of conspiracy. As our holding is based primarily on our interpretation of BR § 8–601 and petitioner's analogy offers little guidance in our interpretive task, we find no merit in petitioner's analogy.