797 A.2d 795

Christina GALLEGOS et al.,

v.

ALLSTATE INSURANCE COMPANY.

No. 567, Sept. Term 2001.

Court of Special Appeals of Maryland.

May 3, 2002.

Russell W. Ray (James J. Gallinaro and Ray, Gallinaro & Strayhorne, P.L.L.C., on brief) Annandale, VA, for appellants.

Amy Leete Leone (Thomas P. Ryan and McCarthy, Wilson & Ethridge, on brief) Rockville, for appellee.

Argued before KENNEY, ADKINS, THEODORE G. BLOOM (Ret'd, specially Assigned), JJ.

KENNEY, J.

Appellants, Christina Gallegos and Thomas Stinger, appeal a decision of the Circuit Court for Montgomery County granting summary judgment in favor of appellee, Allstate Insurance Company ("Allstate"), which had filed a declaratory judgment action to determine its liability under a homeowner's policy

sold to Brenda Ann Epley.[1]  Appellants present four questions on appeal,[2] which we have consolidated into one:

Did the circuit court err in granting summary judgment for Allstate?

Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Brenda Ann Epley was a registered family day care provider[3] who operated a family day care home at her residence, 18 Maplewood Court in Gaithersburg.  One of the children she cared for was appellants' son, Stacy Rae Stinger.

---

1.  Epley, a named defendant, is not participating in this appeal.

2.  Appellants presented the following questions:
    I.  Does § 19–202 of the Maryland Insurance Law Article, which requires an insurer that issues a homeowner's liability insurance policy in the State to offer to provide to policy holders who are registered family day care providers coverage of at least $300,000.00 for liability that results from their activities as family day care providers, restrict the kinds of exclusions an insurer may include in a liability insurance policy the insurer offers to a registered family day care provider?
    II.  Did the trial court err in holding that the restrictions § 19–202 imposes on the kinds of exclusions an insurer may include in a liability insurance policy it offers to a registered family day care provider do not extend to motor vehicle exclusions?
    III.  Did the trial court err in construing §§ 19–202 and 19–106 of the Maryland Insurance Law Article as being mutually exclusive, such that injuries covered under § 19–106 are not covered under § 19–202?
    IV.  Did the trial court err in holding, notwithstanding the requirements of § 19–202 of the Maryland Insurance Law Article, that the motorized vehicle exclusions contained in the liability insurance policy Allstate issued to Epley relieve Allstate of its duty to indemnify and defend Epley?

3.  Epley was a registered provider under Md.Code (1984, 1999 Repl. Vol.), § 5–500 *et seq.* of the Family Law Article ("FL") (referred to elsewhere as "Title 5, Subtitle 5, Part V of the Family Law Article)." " 'Family day care provider' means an individual who cares for no more than eight children in a registered family day care home." FL § 5–559(d).  In a family day care home caring for eight children, no more than four may be under the age of two years.  FL § 5–553(b).

While caring for Stacy on June 7, 1999, when he was two-and-a-half-years old, Epley drove him in her 1994 Dodge Caravan from her residence to another residence, where she was to perform cleaning services. Stacy went inside with Epley, but when he began to get tired, she brought him back outside to the van. The outside temperature exceeded 90 degrees Fahrenheit. She strapped Stacy in his car seat and left him there unattended with only the front windows slightly open. Epley went back inside the house to finish cleaning. Stacy was subsequently overcome by the heat and died of hyperthermia. Allstate does not dispute that Epley's negligence caused Stacy's death.

At the time of Stacy's death, Epley had two insurance policies with Allstate, an automobile liability policy and a policy entitled "Allstate Renter's Policy." Her renter's policy contained a family day care coverage endorsement.[4]

On April 5, 2000, appellants filed a complaint in the Circuit Court for Montgomery County against Epley for wrongful death. On July 14, 2000, Allstate filed in the Circuit Court for Montgomery County the declaratory judgment action that is the subject of this appeal. Allstate sought a declaration from the court that, under the terms of the renter's policy, "[a]ll claims arising from the death of Stacy Rae Stinger are excluded from coverage [under the renter's insurance policy], and Allstate has no liability to defend or indemnify Brenda Ann Epley for any claims arising from the contract for insurance." On April 25, 2001, the circuit court granted summary judgment in favor of Allstate, ruling that the motor vehicle exclusions contained in Epley's renter's policy were effective and not contrary to the public policy of the State as

---

4. As acknowledged by appellants at oral argument, Epley's automobile policy did not contain a home day care endorsement. Nevertheless, Allstate concedes that it must indemnify Epley under her automobile coverage, and that it intends to pay the limits under that policy. Appellants, however, will receive far less under the automobile policy than they would under the renter's policy because Epley apparently only purchased the minimum required automobile coverage.

expressed in Md.Code (1997, 2000 Supp.), § 19–202 of the Insurance Article ("Ins.").[5]

Appellants filed a motion to alter or amend judgment, which was denied on June 27, 2001. Appellants timely appealed both the grant of summary judgment in favor of Allstate and the denial of their motion to alter or amend judgment.

## STANDARD OF REVIEW

A summary judgment motion is not a substitute for trial. Rather it is used to dispose of cases when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. The standard for appellate review of a trial court's grant of summary judgment is whether the trial judge was legally correct in his or her rulings. In granting a motion for summary judgment, the trial judge may not resolve factual disputes, but instead is limited to ruling on matters of law.... If any inferences may be drawn from the well-plead facts, the trial court must construe those inferences in the light most favorable to the non-moving party. The existence of a dispute as to some non-material fact will not defeat an otherwise properly supported motion for summary judgment, but if there is evidence upon which the jury could reasonably find for the non-moving party or material facts in dispute, the grant of summary judgment is improper.

*Okwa v. Harper,* 360 Md. 161, 178, 757 A.2d 118 (2000) (citations omitted).

Although granting summary judgment in a declaratory judgment action is " 'the exception rather than the rule[,]' " it is available in such cases. *Utica Mutual Ins. Co. v. Miller,* 130 Md.App. 373, 380, 746 A.2d 935, *cert. denied,* 359 Md. 31, 753 A.2d 3 (2000) (citations omitted). Because the material facts in this case were essentially undisputed, we decide only whether the circuit court's ruling was legally correct.[6]

---

**5.** Unless otherwise noted, all references to the Insurance Article will be to the version of the Code in effect in 2000, when suit was filed.

**6.** Appellants raised the issue of a disputed fact in their motion to alter or amend, which we will discuss later in this opinion.

## DISCUSSION

Appellants contend that the trial court erred when it ruled that Ins. § 19–202 does not invalidate exclusions in home-owner's or renter's policies that contain a home day care endorsement. Appellants argue that insurance coverage is mandated by Ins. § 19–202, *infra*, and, consequently, only exclusions expressly allowed by the General Assembly can be included in such policies. Appellants also argue that the trial court erred when it interpreted Ins. § 19–202 in conjunction with Ins. § 19–106, *infra*, ultimately finding that they are mutually exclusive. Allstate contends that § 19–202 is not directly applicable because Epley was covered by a renter's, not a homeowner's, liability policy. It also argues that insurance is not compulsory for day care providers and that exclusions are allowable. Allstate urges us to affirm the trial court's interpretation of Ins. §§ 19–106 and 19–202.

### Coverage and Exclusions

The Family Liability Protection section of Epley's renter's policy provides that Allstate

> will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence [7] to which this policy applies, and is covered by this part of the policy.

> We may investigate or settle any claim or suit for covered damages against an insured person. If an insured person is sued for these damages, we will provide a defense with counsel of our choice, even if the allegations are groundless, false or fraudulent. We are not obligated to pay any claim or judgment after we have exhausted our limit of liability.

The Home Day Care Coverage Endorsement contains the following coverage provisions:

---

7. Pursuant to the terms of the policy, "occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, during the policy period, resulting in bodily injury or property damage."

For an additional premium and when the Policy Declarations indicates [sic] that Home Day Care Coverage applies, the coverages of your policy are extended to apply to the home day care business conducted by an insured person at the residence premises.[8] All changes to your policy as provided by this endorsement apply to Home Day Care Coverage only. We do not cover a family day care home business when, at any given time, a day care provider cares for:

1. more than two children under the age of two years; [9] or

2. more than eight children, of whom no more than two may be under the age of two years.

The day care provider's own children under the age of two years shall be counted as children served.[10]

\* \* \*

Coverage X—Family Liability Protection and Coverage Y—Guest Medical Protection apply to bodily injury and property damages arising out of the operation of a home day care business by an insured person at the residence premises for which the insured person receives monetary or other compensation.

---

8. "Residence premises" is defined in the policy as "that portion of any building used by you as a private residence, excluding any portion used for business purposes, which is described on the Policy Declarations." The home day care coverage endorsement provides that "the limits on property used or intended for use in a business, do not apply to property used in connection with a home day care business conducted by an insured person at the residence premises."

9. We note that this language is more restrictive than the limitations on group size set forth in FL § 5-553(b)(1), which states that "[a]t any given time, a day care provider may not care for more than 8 children, of whom no more than 4 may be under the age of 2 years." We offer no opinion on this coverage limitation.

10. This language is in accordance with FL § 5-553(a), which states that "a day care provider's own children under the age of 2 years shall be counted as children served."

Three exclusionary clauses in Epley's renter's policy relate to liability arising from the ownership and use of motor vehicles. One of the clauses provides:

We do not cover bodily injury or property damage arising out of:

a) the negligent supervision by an insured person of any person; or

b) any liability statutorily imposed on any insured person arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, motor vehicle or trailer which is not covered under Section II [11] of this policy.

The second clause, which is contained in Section II, entitled "Family Liability and Guest Medical Protection," states:

We do not cover bodily injury or property damage arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. However, this exclusion does not apply to:

a) a motor vehicle in dead storage or used exclusively on an insured premises; [12]

---

11. Section II of the policy concerns "Family Liability and Guest Medical Protection."

12. "Insured premises" is defined in the policy as:
   a) the residence premises [defined *supra*]; and
   b) under Section II only:
   1) the part of any other premises, other structures and grounds used by you as a residence. This includes premises, structures and grounds you acquire for your use as a private residence while this policy is in effect;
   2) any part of a premises not owned by an insured person but where an insured person is temporarily living;
   3) cemetery plots or burial vaults owned by an insured person;
   4) vacant land, other than farmland, owned by or rented to an insured person;
   5) land owned by or rented to an insured person where a one, two, three or four family dwelling is being built as that person's residence;
   6) any premises used by an insured person in connection with the residence premises;

b) any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an insured person and is being used away from an insured premises;

c) a motorized wheel chair;

d) a vehicle used to service an insured premises which is not designed for use on public roads and not subject to motor vehicle registration;

e) a golf cart owned by an insured person when used for golfing purposes;

f) a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;

g) lawn and garden implements under 40 horsepower;

h) bodily injury to a residence employee.

The third motor vehicle exclusion is contained in the family day care endorsement:

We do not cover bodily injury or property damage occurring at the residence premises and arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of:

a) draft or saddle animals;

b) vehicles used with such animals;

c) motorized land vehicles; or

d) watercraft

by an insured person or employee in the home day care business.

### The Rules of Statutory Construction and the Statutes

Appellants' argument centers around the contention that the trial court erred in its interpretation of Ins. §§ 19–106 and

---

7) any part of a premises occasionally rented to an insured person for other than business purposes.

19–202. Consequently, we review the rules of statutory construction:

The principles of statutory construction are not novel. "Every quest to discover and give effect to the objectives of the legislature begins with the text of the statute." *Huffman v. State*, 356 Md. 622, 628, 741 A.2d 1088, 1091 (1999). If the legislature's intentions are evident from the text of the statute, our inquiry normally will cease and the plain meaning of the statute will govern. *See id.* *See also Martin v. Beverage Capital Corp.*, 353 Md. 388, 399, 726 A.2d 728, 733 (1999); *Philip Elec. North America v. Wright*, 348 Md. 209, 216–17, 703 A.2d 150, 153 (1997); *Schuman, Kane, Felts & Everngam v. Aluisi*, 341 Md. 115, 119, 668 A.2d 929, 931 (1995). We bear in mind, however, that the plain-meaning rule is elastic, rather than cast in stone. *See Kaczorowski v. Mayor of Baltimore*, 309 Md. 505, 513, 525 A.2d 628, 632 (1987). If persuasive evidence exists outside the plain text of the statute, we do not turn a blind eye to it. *See Kaczorowski*, 309 Md. at 514, 525 A.2d 628. We often look to the legislative history, an agency's interpretation of the statute, and other sources for a more complete understanding of what the General Assembly intended when it enacted particular legislation. *See Harris v. State*, 331 Md. 137, 146, 626 A.2d 946, 950 (1993). In so doing, "[w]e may also consider the particular problem or problems the legislature was addressing, and the objectives it sought to attain." *Sinai Hosp. of Baltimore v. Department of Employment and Training*, 309 Md. 28, 40, 522 A.2d 382, 388 (1987). This enables us to put the statute in controversy in its proper context and thereby avoid unreasonable or illogical results that defy common sense. *See Huffman*, 356 Md. at 628, 741 A.2d at 1091; *Marriott Employees Fed. Credit Union v. Motor Vehicle Admin.*, 346 Md. 437, 445, 697 A.2d 455, 459 (1997); *Kaczorowski*, 309 Md. at 513, 525 A.2d at 632.

"We should first attempt to ascertain [the legislature's] intent from the statutory language, reading pertinent parts of the legislative language together, giving effect to all of

those parts if we can, and rendering no part of the law surplusage." *Sinai Hosp. of Baltimore,* 309 Md. at 39–40, 522 A.2d at 388.

*Adamson v. Correctional Medical Services, Inc.,* 359 Md. 238, 251–52, 753 A.2d 501 (2000).

Ins. § 19–106 reads as follows:

An insurer that issues or delivers a policy or contract of motor vehicle liability insurance in the State shall offer to provide to a policyholder, who is registered as a family day care provider under Title 5, Subtitle 5, Part V of the Family Law Article, coverage in at least the amount required under § 17–103 [13] of the Transportation Article [ ("Trans.") ] for liability that results from bodily injury:

(1) to a family day care child while the child is a passenger in an automobile; and

(2) that arises out of an insured's activities as a family day care provider.

Ins. § 19–202 reads as follows:

An insurer that issues or delivers a policy or contract of homeowner's liability insurance in the State shall offer to provide to a policyholder, who is registered as a family day care provider under Title 5, Subtitle 5, Part V of the Family Law Article, coverage of at least $300,000 for liability that results from bodily injury, property damage, or personal

---

13. Md.Code. (1977, 1993 Rcpl.Vol., 2000 Supp.), § 17–103 of the Transportation Article reads, in pertinent part:

(b) *Required minimum benefits.*—The security required under this subtitle shall provide for at least:

(1) The payment of claims for bodily injury or death arising from an accident of up to $20,000 for any one person and up to $40,000 for any two or more persons, in addition to interest and costs;

(2) The payment of claims for property of others damaged or destroyed in an accident of up to $15,000, in addition to interest and costs;

(3) Unless waived, the benefits described under § 19–505 of the Insurance Article as to basic required primary coverage; and

(4) The benefits required under § 19–509 of the Insurance Article as to required additional coverage.

injury arising out of an insured's activities as a family day care provider.

When these provisions were first enacted in 1986 pursuant to Senate Bill 899, they were combined in one statute that provided:

(a) *Homeowner's liability insurance.*—Any insurer that issues or delivers a policy or contract of homeowner's liability insurance in Maryland shall offer, to any policyholder who is registered under Part V of Subtitle 5 of the Family Law Article as a family day care home provider, the option of purchasing coverage for liability as a result of bodily injury, property damage, or personal injury arising out of the insured's activities as a family day care provider in an amount not less than $300,000.

(b) *Motor vehicle liability insurance.*—Any insurer that issues or delivers a policy or contract of motor vehicle liability insurance in Maryland shall offer, to any policyholder who is registered under Part V of Subtitle 5 of the Family Law Article as a family day care home provider, the option of purchasing coverage for liability as a result of bodily injury to a family day care child while a passenger in an automobile arising out of the insured's activities as a family day care provider in an amount not less than that required under § 17–103 of the Transportation Article.

Md.Code (1957, 1986 Repl.Vol.), Art. 48A, § 481D.

When Senate Bill 899 was first introduced, it contained only the provision requiring insurers to offer at least $300,000 worth of coverage to registered family day care homes. 1986 Senate Journal 791. The statute was introduced because home day care providers were being dropped from their homeowner's insurance. *Liability Insurance—Family Day Care Homes: Hearing on S.B. 899*, Senate Finance Committee Minutes (Feb. 25, 1986) (hereinafter "Senate Finance Committee Minutes"). There were also complaints about the lack of affordable coverage. *Id.*

Testimony at the Senate Finance Committee hearing, however, urged amendments to the bill to require insurers to also

offer automobile coverage to family day care homes. Senate Finance Committee Minutes. Subsequently, on March 20, 1986, the bill was amended to include the language pertaining to automobile coverage. Journal of the Proceedings of the Senate of Maryland 1955 (1986). The statute went into effect on June 1, 1986, 1986 Md. Laws, Chap. 120, and even though it was split into two different provisions when the Insurance Article was compiled, the language of the provision has not undergone substantive change. The Revisor's Note to Ins. § 19–106 states:

> This section is new language derived without substantive change from former Art. 48A, § 481D(b).

> In the introductory language of this section, the requirement that an insurer offer "to provide" coverage is substituted for the former requirement that an insurer offer "the option of purchasing" coverage for brevity.

> Also in the introductory language of this section, the former reference to a family day care "home" provider is deleted to conform to the terminology used in Title 5, Subtitle 5, Part V of the Family Law Article and for consistency within this section.

The Revisor's Note to Ins. § 19–202 is nearly identical. With this background in mind, we now turn to the arguments presented.

### Applicability of Ins. § 19–202 to Renter's Policies

In its ruling, the court did not explicitly address whether Ins. § 19–202 is applicable to renter's policies, but the issue was briefly discussed at the hearing:

> [APPELLANTS' ATTORNEY]: The—I don't—I will touch upon this briefly, but the renter's versus the homeowner's policy—

> THE COURT: That doesn't bother me.

> [APPELLANT'S ATTORNEY]: Doesn't bother you?

> THE COURT: That doesn't—I think it is sufficiently analogous, although, you know, these sometimes have technicalities that are—that the appellate courts seem to like—

[APPELLANT'S ATTORNEY]: Right. I guess then I—then I will pass that issue by and just briefly conclude here. The scope of the possible exclusions that could be in these policies—

The renter's policy issue was raised in the trial court, and although with scant specificity, the trial court clearly found a renter's policy to be "sufficiently analogous" to homeowner's liability insurance as to be included within the legislation.

Neither "homeowner's policy" nor "renter's policy" is a defined term in the general definitions of the Insurance Article, but the definition of property insurance refers to "homeowner's insurance:"

(1) "Property insurance" means insurance on real or personal property on land, in water, or in the air or an interest in real or personal property against loss or damage from any hazard or cause and against loss that is consequential to the loss or damage.

(2) "Property insurance" includes fire insurance, flood insurance, extended coverage insurance, **homeowners insurance,** farm owners insurance, allied lines insurance, earthquake insurance, growing crops insurance, aircraft physical damage insurance, automobile physical damage insurance, glass insurance, livestock insurance, and animal insurance.

(3) "Property insurance" does not include insurance against legal liability for loss or damage to real or personal property.

Ins. § 1–101(gg) (emphasis supplied).

The Maryland Property Insurance Availability Act provides: "Homeowner's insurance" means insurance for residential property that provides a combination of coverages including:

(1) fire;

(2) extended coverage;

(3) vandalism and malicious mischief;

(4) burglary;

(5) theft; and

(6) personal liability.

Ins. § 25–401(e). A homeowner's policy is a form of property insurance.

One commentator on insurance law related to residential property has remarked in regard to homeowner's and renter's insurance:

> Homeowners insurance has become commonplace in the United States largely because, as one would expect, so many individuals and families are "homeowners" in the literal sense that they own their own residences and need property insurance for them. In addition, property insurance for the contents of apartments and other personal residences, whether owned by the occupants or not, is available under homeowners policies (often referred to as "renters" insurance). Special variations of "homeowners" or "renters" insurance are also commonly available to provide protection for hybrid forms of residential ownership, such as the condominium, the co-operative, and the homeowners association.
>
> Property insurance for personal residences is usually sold in a "package" policy together with some kind of liability coverage. As a result, the variety of liability insurance usually referred to as "homeowners" is purchased as an adjunct to property insurance by both owners and renters. In most situations, however, regardless of the exact form of the residential ownership or leasehold interest, the liability coverages sold in connection with personal residences are very similar.

Rowland H. Long, 2 THE LAW OF LIABILITY INSURANCE, § 9.01 (1967) (footnotes omitted).

> The stated purpose of Art. 48A, § 481D was to require
>
> that any insurer issuing or delivering a homeowner's liability insurance policy or motor vehicle liability insurance policy in this State shall offer to an insured policy holder who is registered as a family day care home provider certain

insurance coverage for the liability arising out of the insured's activities in providing a family day care home. 1986 Maryland Laws Ch. 120.

The statute as originally enacted was clearly meant to provide liability insurance for family day care providers, both in the "family day care home" and within automobiles. To exclude renter's policies from the statute would be to create two classes of day care providers: homeowners who are presented the opportunity to purchase insurance coverage and renters who are not given the opportunity to purchase insurance. In light of the overall statutory scheme, this result would seem to us illogical.

Indeed, we find Allstate's argument that Ins. § 19–202 does not cover renter's policies to be somewhat disingenuous in light of the fact that they offered and sold to Epley—and, presumably, to other insureds—a policy containing a family day care endorsement entitled "Home Day Care Coverage Endorsement—Maryland" that closely tracks Ins. § 19–202. If Allstate believed that Ins. § 19–202 was not meant to cover family day care providers who rent, rather than own, their homes, would it offer renters such policies when apparently such coverage was not readily available prior to the legislation? Although renter's policies are not expressly referred to in Ins. § 19–202, we hold that the statute is fairly read to include such policies.

## Mandatory Insurance Coverage and Public Policy

■ Appellants argue that "where the legislature has mandated insurance coverage, the Courts will not create or permit exclusions that are not specifically set out in the statute." Appellees argue that Ins. § 19–202 does not mandate insurance coverage. The trial court's ruling on this issue was as follows:

The defendants cite to an extensive number of cases regarding compulsory insurance, and seek to raise the public policy issue through that analogy.

The plaintiff, on the other hand, claims that there is no public policy involved because this provision is not a compulsory insurance provision under the existing case law.

The Court's view is that this provision of Section 19–202 does not create compulsory insurance of the nature that is apparent in the case law cited by the defendants, or traditionally appearing in the statute regarding motor vehicle insurance as an example.

However, it is the Court's view that it is compulsory in the sense that it is compulsory on the insurance company to provide this kind of coverage, and to offer this kind of coverage to an insured.

The insured doesn't have to take it, but the insurance company is mandated by the statute to offer it.

So in that sense it is compulsory on the insurance company, and in that sense it is—does create an issue of public policy regarding the scope and language of the policy that is offered by the insurance company.

As appellants point out, we have previously recognized that,

[w]here the legislature has mandated insurance coverage, this Court will not create exclusions that are not specifically set out in the statute. *Enterprise Leasing Co.* [*v. Allstate Ins. Co.*, 341 Md. 541, 547, 671 A.2d 509 (1996) ]; *see also Larimore* [*v. American Ins. Co.*, 314 Md. 617, 622, 552 A.2d 889 (1989) ]; *Jennings* [*v. GEICO*, 302 Md. 352, 358–59, 488 A.2d 166 (1985) ]. We refuse to do so because "if any and all exclusions from this required liability coverage are valid as long as they are not expressly prohibited by statute, the purpose of the compulsory automobile liability insurance could be frustrated to a significant extent." *Jennings, supra*, 302 Md. at 360[, 488 A.2d 166].

*Blue Bird Cab Co., Inc. v. Amalgamated Casualty Ins. Co.*, 109 Md.App. 378, 388, 675 A.2d 122 (1996). *See also Lewis v. Allstate Ins. Co.*, 368 Md. 44, 47–48, 792 A.2d 272, 274 (2002) (concerning the uninsured motorist provisions of an automobile liability policy).

*Blue Bird* and *Lewis* concerned automobile insurance, which is mandatory in Maryland. *See* Ins. §§ 19–504 (liability insurance),[14] 19–509 (uninsured motorist coverage).[15] Ins. § 19–202, on the other hand, does not mandate insurance coverage. The plain language of the statute does not require home day care providers to purchase the insurance or insurers to include coverage in any policy that it might issue. It merely requires insurance companies to offer such insurance. Ins. § 19–202 ("[a]n insurer ... **shall offer to provide** to a policyholder ... coverage of at least $300,000 for liability" (emphasis supplied)). It is silent as to exclusions. This language is substantially different than the language of Ins. § 19–504, which requires that any motor vehicle liability policy "issued, sold, or delivered in the State shall provide" a minimum amount of liability coverage, or of Ins. § 19–509, which requires "each motor vehicle liability insurance policy issued" to contain uninsured motorist coverage. The General Assembly has sought to assure the availability of insurance, but the choice to purchase remains with the day care provider. Ins. § 19–202, as written, is not a compulsory liability insurance statute and a motor vehicle exclusion is not precluded by the legislature.

---

**14.** Section 19–504 states: "Each motor vehicle liability insurance policy issued, sold, or delivered in the State **shall provide the minimum liability coverage** specified in Title 17 of the Transportation Article." (Emphasis supplied.)

**15.** Section 19–509 provides, in pertinent part:

(c) *Coverage required.*—In addition to any other coverage required by this subtitle, each motor vehicle liability insurance policy issued, sold, or delivered in the State after July 1, 1975, **shall contain coverage** for damages, subject to the policy limits, that:

(1) the insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in a motor vehicle accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle; and

(2) a surviving relative of the insured, who is described in § 3–904 of the Courts Article, is entitled to recover from the owner or operator of an uninsured motor vehicle because the insured died as the result of a motor vehicle accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle.

Ins. § 19–509(c) (emphasis supplied). Ins. § 19–509(f) sets forth exclusions that an insurer may write into a policy.

This "plain language" interpretation that the General Assembly intended only to require insurers to offer family day care coverage is supported by the legislative history. The discussion at the hearings concerned the lack of availability of insurance for family day care homes. There was no mention at all of requiring the day care providers to buy insurance. Senate Finance Committee Minutes. The only specifics of the statute were that at least $300,000 of coverage had to be offered to designated family day care providers. Moreover, as Allstate argues, there are no provisions in either the Family Law Article or COMAR 07.04.01.01 *et seq.*, which pertain to the licensing of family day care providers, that require the purchase of such insurance.

■ Appellants also argue that the trial court erred by reading Ins. §§ 19–106 and 19–202 in combination with each other. We disagree. Indeed, one of the cardinal rules of statutory construction is to interpret statutes in accordance with the statutory scheme as a whole. *Adamson,* 359 Md. at 252, 753 A.2d 501.

■ As noted, Ins. §§ 19–106 and 19–202 were originally drafted as two parts to the same statute, Art. 48A, § 481D. If Art. 48A, § 481D(a), now Ins. § 19–202, was meant to cover all liability for injury related to day care services, no matter where the injury occurred, there would have been no reason for the legislature to enact the automobile insurance provisions.[16] When interpreting a statute, we are not to render any part of the law surplusage, and we are to avoid unreasonable or illogical results. *Adamson,* 359 Md. at 252, 753 A.2d 501.

---

16. Although there are potentially gaps in coverage, it is not clear from the legislative history that the General Assembly was, in fact, trying to cover all possibilities. We can say only that there was a perceived problem with access to premises liability insurance for family day care providers because of the business use of the property, and that the General Assembly acted to remedy that situation. As shown by the form policy in this case, the automobile exclusion is a common exclusion in homeowner's insurance policies. Injuries that are not covered by the family day care provider's policies might be covered by other forms of insurance.

Failure to read §§ 19-106 and 19-202 in conjunction with each other would do just that.

The two statutory provisions suggest the recognition of the inherent differences between homeowner's and automobile liability policies. As Allstate noted at oral argument, automobile liability policies are designed to cover an entirely different set of risks than are homeowner's policies, and many homeowner's policies contain automobile exclusions because of this difference. Automobile liability polices arose out of the desire to have "a single policy to cover all or most of the risks associated with a specific activity." Lee L. Russ, COUCH ON INSURANCE, § 1:48(3d ed.1995) (hereinafter "Couch").

> Automobile insurance may provide protection against a myriad of risks associated with ownership, operation, or travel in an automobile, including traditional risks like liability, property damage, collision, fire, theft, and transportation, and new, mandatory coverage schemes such as uninsured motorist protection and no fault. At one time, the term "automobile insurance," when used without qualification, was generally understood to mean liability insurance, but the justification for that presumption should be seriously questioned under modern practice in which a growing number of coverages are mandatory, and several other types of coverage are as pervasive as liability insurance. Still, in keeping with the fact that automobile liability insurance is mandatory in most places, automobile liability polices are commonly considered at least slightly different than many other types of liability insurance. It is, for example, considered that these policies are in many ways as much for the protection of the general travelling public as they are for the insureds.

Couch at § 1:50 (footnotes omitted).

Automobile insurance is required in Maryland, but as of now, it is not mandatory that family home day care providers be insured. *See Lewis,* 368 Md. at 46-47, 792 A.2d at 273-74. The law does require, however, that insurers permit family

day care providers to extend their auto policies to cover day care activities.

Based on the argument that Ins. § 19–202 mandates family day care liability insurance, appellants argue that the motor vehicle exclusions in Epley's Allstate policy are void because of public policy. Appellants are concerned that, by allowing insurance companies to include exclusions in family day care endorsements without restraint, those companies might write so many exclusions as to make the coverage worthless. They provide a number of possible scenarios unrelated to the specifics of this case concerning exclusions that might be added to policies by insurers that would ultimately negate liability. Because we have rejected the foundation for that argument, we do not address the "what ifs" presented in its support.

Whether insurance encompassing all family day care activities should be mandatory, in light of the risk to both the family home daycare provider and to the parents and children who utilize such services, is an inherently complex question. Its resolution involves the balancing of cost and risk in providing safe but affordable day care to meet the needs of working parents and their children. Such public policy issues are better addressed by the legislature than by the courts in the microcosm of one tragic and sympathetic case.

### Applicability of the Provisions of Ins. § 19–106

Appellants contend that, because Ins. § 19–106 applies to injuries arising out of the provision of day care services only while the child is a "passenger" in the vehicle, there is a gap in coverage that the homeowner's policy should be read to cover.[17] This is because, according to appellants, Stacy was not a "passenger" in Epley's minivan. Whereas they seek a broad read of Ins. § 19–202, they propose a narrow read of Ins. § 19–106.

---

**17.** The language of Ins. § 19–106 requires insurers to offer automobile coverage for bodily injury occurring "while the child is a passenger in [an insured's] automobile" and arising "out of an insured's activities as a family day care provider."

Appellants raised this issue in their motion to alter or amend judgment and for leave to submit additional evidence, suggesting for the first time that there was a question of material fact to be resolved. The question was whether the van was "merely the location of, rather than the mechanism for the tragic death."

Previously, in their wrongful death complaint, appellants alleged, in paragraphs 5–7:

5. On or about June 7, 1999, while still in the care and custody of the defendant, Stacy Rae Stinger, a minor, sustained fatal injuries after he was strapped in a safety seat and was left unattended for several hours with the windows up in the defendant Epley's 1994 Dodge Caravan minivan when the outside daytime temperature exceeded ninety (90 F) degrees Fahrenheit.

6. As a child daycare operator the defendant had a duty to use reasonable care to provide a safe environment for the minor child, to watch the minor child so that he did not injure himself and to be vigilant so that other individuals did not cause injury to him.

7. By failing to use such reasonable care and by leaving the minor, Stacy Rae Stinger, unattended and strapped in a safety seat inside her minivan with the windows up on a hot summer day for several hours, thereby causing the injuries which resulted in the child's death, Defendant Epley carelessly and negligently breached the duties she owed to minor, Stacy Rae Stinger.

The "statement of material facts not in dispute," provided:

On June 7, 1999, Epley put Stacy Rae Stinger in her 1994 Dodge Caravan minivan and drove him to another residence where she had been hired to perform cleaning services. Epley initially brought the child inside the house with her, but when he began to get tired, she put him back in her minivan, notwithstanding the outside daytime temperature exceeded ninety degrees Fahrenheit (90 F). Epley left him there, unattended and strapped in a safety seat with the windows up, for several hours. The boy was subsequently

overcome by heat prostration (hyperthermia), resulting in his death.

The Medical Examiner's report concluded that Stacy "died of hyperthermia (heat stroke) after being confined to a motor vehicle in the heat."

Because appellants have appealed the court's denial of their motion to alter or amend judgment, we address this issue in the context of our review of the court's denial of that motion, for abuse of discretion. *Falcinelli v. Cardascia,* 339 Md. 414, 430, 663 A.2d 1256 (1995); *Wormwood v. Batching Sys.,* 124 Md.App. 695, 699, 723 A.2d 568, *cert. denied,* 354 Md. 113, 729 A.2d 405 (1999).

We have previously defined the abuse of discretion standard as a " 'reasoned decision based on the weighing of various alternatives.' There is an abuse of discretion *'where no reasonable person would take the view adopted by the [trial] court* [.]' " *Metheny v. State,* 359 Md. 576, 604, 755 A.2d 1088 (2000) (quoting *In re Adoption/Guardianship No. 3598,* 347 Md. 295, 312, 701 A.2d 110, 118 (1997) (citations omitted)) (emphasis in *Metheny* ). Accordingly, we limit our inquiry to whether a reasonable person would have denied the motion to alter or amend judgment in light of appellants' arguments about the construction of the word "passenger" in Ins. § 19–106.

Neither party has provided us with a definition of "passenger" in either the Code or case law, and our search has not provided one. We note that the Personal Injury Protection statute found at Ins. § 19–505(a)(2) speaks generally to the term "passenger:"

[E]ach insurer that issues, sells, or delivers a motor vehicle liability insurance policy in the State shall provide coverage for the medical, hospital, and disability benefits described in this section for each of the following individuals:

\* \* \*

(2) an individual who is injured in a motor vehicle accident while **occupying** the insured motor vehicle as a guest or passenger[.] [Emphasis supplied.]

Although this provision refers to a "motor vehicle accident," it does not require that the vehicle be in motion when the "passenger" is injured.

Likewise, the plain meaning of the word does not appear to require that a guest in an automobile is only a "passenger" when the car is moving. A "passenger" is defined as "a traveler in a public or private conveyance," MERRIAM–WEBSTER'S COLLEGIATE DICTIONARY 847 (10th ed.2000), "who is not the operator," WEBSTER'S DESK DICTIONARY 331 (1993). A "traveler" is "one that goes on a trip or journey." *Id.* at 1253. Stacy fits this description, and his status as a passenger in the van was not abrogated merely because the van was not moving. Stacy was transported from Epley's premises in the van as a result of insured's activities as a family day care provider. The intent was for Stacy to sleep and when Epley finished cleaning, they would complete the trip by traveling back to Epley's house.

At least one other state, in a similar situation, has allowed automobile exclusions to stand in a premises liability policy. In *St. Paul Mercury Ins. Co. v. Chilton–Shelby Mental Health Center*, 595 So.2d 1375 (Ala.1992), an eighteen-month-old boy was transported in a van to the Center run by defendant. The defendant had contracted with the YWCA to transport children between their homes and the YWCA. Due to an oversight, he was not removed from the van at the YWCA, but instead was driven to the Center and left in the van on a hot summer day. The child ultimately succumbed to hyperthermia. The defendant's policy [18] excluded injury "due to the ownership [or] use of: any auto owned [or] operated ... by any protected person." *Chilton–Shelby,* 595 So.2d at 1376. The Supreme Court of Alabama upheld this exclusion and found that appellant was not liable under the policy because the child's death "was due to the ownership or use of the van." *Id.,* 595 So.2d at 1377.

---

**18.** It is not clear from the case whether some amount of insurance was mandatory.

Not only was the issue not raised in a timely manner, the facts surrounding Stacy's death were not in dispute. From these facts it could be concluded that his death occurred as a result of Epley's ownership, use, and occupancy of her van. We find no abuse of discretion in the trial court's denial of the motion to alter or amend judgment.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANTS.**